FILED BY CLERK

OCT 20 2011

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| BRUCE A. SHOLES; RUSSELL R. SHOLES and MARY L. SHOLES, husband and wife, | ) ) ) ) | 2 CA-CV 2010-0216 2 CA-CV 2010-0217 (Consolidated) |
| Plaintiffs/Counterdefendants/ Appellants, | ) ) ) | DEPARTMENT A |
| v. | ) ) ) | O P I N I O N |
| ELEANOR FERNANDO and NIHAL J. FERNANDO, wife and husband; JUDY FERNANDO-SHOLES; and RAYNU FERNANDO, | ) ) ) ) ) ) | |
| Defendants/Counterclaimants/ Appellees. | ) ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20063454

Honorable Ted B. Borek, Judge

AFFIRMED

Bruce A. Sholes                                                                            Cortaro
                                                                          In Propria Persona

Russell R. Sholes                                                                         Cortaro
                                                                          In Propria Persona

Mary L. Sholes                                                                            Cortaro
                                                                          In Propria Persona

Mesch, Clark & Rothschild, P.C.

By Michael J. Crawford and Paul A. Loucks

Tucson
Attorneys for
Defendants/Counterclaimants/
Appellees

B R A M M E R, Judge.

¶1　　　　　Russell, Mary, and Bruce Sholes (collectively "the Sholes") appeal from the trial court's judgment determining the parties' ownership interests in Oasis at Wild Horse Ranch, LLC (Oasis) and in two residential properties. The Sholes argue there was insufficient evidence to support the court's determination that Judy Fernando-Sholes and Raynu Fernando each owned an interest in Oasis, the court erred in allocating ownership among the parties, the court erred in determining Bruce had "abandoned" the cash he asserted he had contributed as capital in Oasis, and the court lacked jurisdiction to determine ownership of the property known as the Camino Verde house.[1] We affirm.

## Factual and Procedural Background

¶2　　　　　"We view the facts in the light most favorable to upholding the trial court's ruling."[2] *Hammoudeh v. Jada*, 222 Ariz. 570, ¶ 2, 218 P.3d 1027, 1028 (App. 2009).

---

[1]The Sholes' opening brief identifies numerous other "sub-issues" not argued or supported in the argument section—including issues regarding interest on capital contributions, judgment for non-party creditors, jury instructions, closing arguments, and others. Because these issues were not argued sufficiently, we do not address them. *See Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393-94 n.2 (App. 2007) (failure to develop and support argument waives issue on appeal).

[2]The Sholes' statement of facts fails to make appropriate citations to the record as required by Rule 13(a)(4), Ariz. R. Civ. App. P., and we therefore have disregarded it. *See State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, n.1, 963 P.2d 334, 336 n.1 (App. 1998). Instead, we rely on the Fernandos' statement of facts and our review of

Oasis was formed in 1999 when articles of organization were filed with the Arizona Corporation Commission listing four parties each owning an interest twenty percent or greater: Judy, Raynu, their parents Nihal and Eleanor Fernando (collectively "Fernandos"), and Bruce's parents Russell and Mary Sholes. Bruce and Judy, who were planning to marry, and Judy's brother Raynu, attended an auction and made the successful bid on a guest ranch property on behalf of Oasis. Money to purchase that property came from various sources the parties disputed at trial. After the property was acquired, Raynu and Judy were responsible for most of the day-to-day management of Oasis.

¶3 In 2006, the Sholes and the Fernandos began litigation involving multiple claims and counterclaims regarding Oasis's ownership and management. The trial court granted directed verdicts on some claims and granted partial summary judgment in favor of the Sholes ruling that Eleanor and Nihal had no interest in Oasis. By the time of trial, the claims had been reduced to who owned Oasis as between Russell and Mary, Bruce, Raynu, and Judy.

¶4 After a nine-day jury trial, the advisory jury found that Raynu, Judy, and Russell and Mary had agreed to make capital contributions to Oasis. It also found that Judy and Raynu collectively had contributed over $300,000 in services to Oasis. The

the record. Additionally, we disregard those portions of the Sholes' reply brief to the extent not "confined strictly to rebuttal of points urged in the appellee's brief." Ariz. R. Civ. App. P. 13(c).

advisory jury concluded that Russell and Mary owned fifty percent of Oasis and that Raynu and Judy each owned twenty-five percent of Oasis.

¶5    After considering the record, including the evidence presented at trial, and the advisory jury verdicts, the trial court ruled that Oasis was owned: fifty percent by Russell and Mary, twenty-five percent by Raynu, and twenty-five percent by Judy. The court further concluded "that portion of ownership attributable to the Sholes to be $170,000, and that portion attributable to Raynu Fernando to be $85,000, and that portion attributable to Judy Fernando to be $85,000." It found Bruce Sholes had no ownership interest in Oasis. The court also found "Bruce Sholes attempted to avoid his creditors by holding various assets in the name of Russell and Mary Sholes, including . . . [the residence known as] the Camino Verde House." As a result, the court found that Russell and Mary held title to one half the Camino Verde house in a constructive trust as to any claims of Bruce's creditors and the other half in a resulting trust for Judy. The Sholes filed a motion for a new trial, which the court denied. This appeal followed.

## Discussion

### Ownership of Oasis

¶6    The Sholes argue there was insufficient evidence to support the trial court's ruling that Judy and Raynu each owned a twenty-five percent interest in Oasis. We defer to a trial court's factual findings and will not set them aside on appeal "unless they are clearly erroneous or not supported by substantial evidence." *Nordstrom, Inc. v. Maricopa Cnty.*, 207 Ariz. 553, ¶ 18, 88 P.3d 1165, 1170 (App. 2004); *see also* Ariz. R. Civ. P. 52(a) ("Findings of fact . . . shall not be set aside unless clearly erroneous, and due regard

4

shall be given to the opportunity of the trial court to judge the credibility of witnesses."). "To the extent the parties presented facts from which conflicting inferences could be drawn . . . , it was for the trial court, not this court, to weigh those facts." *Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶ 27, 161 P.3d 1253, 1261 (App. 2007). Moreover, any additional findings necessary to sustain the judgment are implied if they are reasonably supported by the evidence and not in conflict with the court's express findings. *Gen. Elec. Capital Corp. v. Osterkamp*, 172 Ariz. 191, 193, 836 P.2d 404, 406 (App. 1992). However, we are not bound by a trial court's conclusions of law, which we review de novo. *See Flying Diamond Airpark, LLC v. Meienberg*, 215 Ariz. 44, ¶ 9, 156 P.3d 1149, 1152 (App. 2007).

*Law of the Case*

¶7 The Sholes first argue the "law of the case" doctrine bound the trial court to a ruling issued by a judge previously assigned to the case. They argue that judge ruled during a hearing concerning the ownership interests of Eleanor and Nihal Fernando that a written agreement signed by all members of the limited liability company (LLC) was required before services rendered the LLC by a member could have been considered a valid capital contribution.

¶8 The "law of the case" doctrine refers to "'the judicial policy of refusing to reopen questions previously decided in the same case by the same court or a higher appellate court.'" *Hall v. Smith*, 214 Ariz. 309, ¶ 28, 152 P.3d 1192, 1200 (App. 2007), *quoting Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, ¶ 12, 79 P.3d 673, 677 (App. 2003). However, the rule is "'one of procedure, not of substance'" and "'[a] court does

5

not lack the power to change a ruling simply because it ruled on the question at an earlier stage,'" especially where a substantial change has occurred in the evidence. *Id.* ¶¶ 28-29, *quoting Love v. Farmers Ins. Grp.*, 121 Ariz. 71, 73, 588 P.2d 364, 366 (App. 1978). The doctrine is not absolute, does not have the same binding effect as the doctrine of res judicata, and should not be applied "'when it would result in a manifestly unjust decision.'" *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, ¶ 12, 256 P.3d 635, 640 (App. 2011), *quoting Dancing Sunshines Lounge v. Indus. Comm'n*, 149 Ariz. 480, 482, 720 P.2d 81, 83 (1986).

¶9 Although the Sholes do not cite the portion of the record that purportedly contains the "law of the case" ruling as they have stated it, they refer generally to the hearing challenging the trial court's grant of partial summary judgment determining that Eleanor and Nihal had no ownership interest in Oasis. The court granted the motion because Eleanor and Nihal had not "come forward with . . . competent evidence to support any capital contributions made or to be made by them pursuant to A.R.S. § 29-701." Even assuming, without deciding, that the court's comments at the hearing "decided" the requirements that Eleanor and Nihal were required to meet pursuant to § 29-701, *see Hall*, 214 Ariz. 309, ¶ 28, 152 P.3d at 1200, the issue before the court as to Judy and Raynu was substantially different and, as the court noted, "distinguished due to factual differences between Judy and Raynu as contrasted with their parents, Eleanor and Nihal." The Sholes do not dispute that Judy and Raynu presented competent evidence they had made capital contributions to Oasis, in direct contrast to the court's finding that Eleanor and Nihal had not presented evidence of "any capital contributions

6

made." Therefore, to the extent the court reopened any previously raised question, it was within its power to do so. *See Lennar Corp.*, 227 Ariz. 238, ¶ 12, 256 P.3d at 639-40 (law of case applies where "facts, issues and evidence are substantially the same as those upon which the first decision rested").

*Evidence of Ownership*

¶10 The Sholes also argue A.R.S. §§ 29-701(A) and 29-702(A) compel the conclusion that Judy and Raynu could not have acquired an ownership interest in Oasis in exchange for services rendered because they did not "come forward with a writing signed by them at any point in time" promising to make such a contribution. Section 29-701 provides:

> **A.** An interest in a limited liability company may be issued in exchange for a capital contribution or an enforceable promise to make a capital contribution in the future, or both.
>
> **B.** Except as otherwise provided in an operating agreement, the agreement or consent of all of the members is necessary to fix or modify the amount and character of the capital contributions that a member shall make or shall promise to make in exchange for an interest in the limited liability company.

A capital contribution may include "services rendered or any other valuable consideration." A.R.S. § 29-601(3).

¶11 "The primary rule of statutory construction is to find and give effect to legislative intent." *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). We first look to the plain language of the statute as the best reflection of the legislature's intent. *See id.* If the statute's language is unambiguous, we

7

give effect to it and do not employ other rules of statutory construction to determine its meaning. *Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Sections 29-701(A) and 29-601(3) provide that an interest in an LLC may be issued in exchange for services or for an enforceable promise to provide services in the future. Section 29-701(B) provides that LLC members must "agree[] or consent" to the amount and character of those contributions. In this case, the trial court considered evidence including the parties' intent to distribute ownership as described in the original articles of organization and the advisory jury's finding that Raynu, Judy, and Russell and Mary had agreed to make capital contributions to Oasis. As discussed below, substantial evidence in the record supports the court's determination that Judy and Raynu each owned a twenty-five percent interest in Oasis pursuant to § 29-701.

¶12 However, the Sholes argue the phrase "enforceable promise" in § 29-701(A) means a member can never receive an ownership interest in exchange for services without providing evidence of a written agreement because § 29-702(A) provides that "[a] promise by a member to make a capital contribution to the limited liability company is not enforceable unless set out in writing and signed by the member." They argue that otherwise the word "enforceable" in § 29-701(A) is rendered superfluous.

¶13 We disagree with the Sholes' contention that § 29-702(A) required Judy and Raynu to present a written agreement to the trial court in order to prove an ownership interest in Oasis. Section 29-702 first states a promise to make a capital contribution is enforceable only if "set out in writing and signed by the member." § 29-702(A). It then

8

outlines the remedies available to the LLC when a member fails to deliver a promised capital contribution, including a right to the cash value of the promised capital contribution or to initiate "legal action for damages for breach of contract or for specific performance." § 29-702(B), (D). Section 29-702 is irrelevant where no promise has been breached, where promised services already have been rendered, and where the sole issue remaining is whether the members of an LLC originally intended that such services were to be in exchange for an ownership interest. Therefore, it does not impose a written agreement requirement in this case.

¶14 Moreover, this interpretation of § 29-701 is consistent with A.R.S. § 29-854(B), which provides that "[t]he law of estoppel . . . appl[ies] to this chapter." Promissory estoppel provides an equitable remedy that renders a promise enforceable, *Double AA Builders, Ltd. v. Grand State Constr. L.L.C.*, 210 Ariz. 503, ¶¶ 45, 48, 114 P.3d 835, 843, 844 (App. 2005), where a promise has been made "which the promissor should reasonably foresee would cause the promisee to rely, [and] upon which the promisee actually relies to his detriment," *Contempo Constr. Co. v. Mountain States Tel. & Tel. Co.*, 153 Ariz. 279, 282, 736 P.2d 13, 16 (App. 1987); *see also* Restatement (Second) of Contracts § 90 (1981). The Sholes' suggested interpretation of § 29-701(A) as limited by § 29-702(A) would have the absurd result of prohibiting a court from exercising its equitable powers to provide a remedy under the principle of promissory estoppel where, as in this case, the only way to avoid an injustice is to enforce the

9

promise.[3] *See* Restatement § 90; *see also* A.R.S. § 29-856 (where situation not covered by statutes governing LLC's, "the rules of law and equity . . . govern").

¶15 The trial court's determination that Judy and Raynu each own a twenty-five percent interest in Oasis is supported by substantial evidence in the record. The original recorded articles of organization for Oasis stated that Judy and Raynu were two of four parties who each would "own[] a twenty-percent . . . or greater interest in the capital or profits of the company." Evidence at trial showed that Bruce had named Raynu as a shareholder in a complaint in previous litigation involving Oasis. Raynu testified he and Judy were "supposed to build the company and create a business with our service" in exchange for an ownership interest, and he would not have agreed to work at Oasis merely as an employee. Judy testified she "would have walked away" from Oasis if her ownership interest had been eliminated. Although the Sholes contend other testimony disputed those representations, they do not provide supporting citations to the relevant portion of the record. Moreover, even where conflicting evidence exists, this court will not reweigh the evidence and "we affirm the trial court's ruling [if] substantial evidence supports it." *See Double AA Builders, Ltd.*, 210 Ariz. 503, ¶ 41, 114 P.3d at 843 ("due regard" given to trial court's ability to judge credibility of witnesses). The advisory jury found that Raynu, Judy, and Russell and Mary came to an agreement to make capital

---

[3]The Sholes also argue awarding "sweat equity" to Judy and Raynu without a written agreement is contrary to law because the Sholes have not benefitted from the arrangement. However, the argument fails to make any citations to the record or to relevant authority. Therefore, the argument is waived. *See* Ariz. R. Civ. App. P. 13(a)(6); *Polanco*, 214 Ariz. 489, n.2, 154 P.3d at 393-94 n.2.

10

contributions to Oasis, and the Sholes do not dispute the jury's finding that Judy and Raynu in fact contributed over $300,000 in services to Oasis. Therefore, the court did not err in determining that Raynu and Judy each owned twenty-five percent of Oasis.

*Calculation of Ownership Percentage*

¶16 The Sholes argue the trial court erred in allocating the percentage of ownership interests in Oasis by not crediting the Sholes with an ownership interest that equals the amount of cash they paid toward the purchase of Oasis, including an additional $4,500 plus a $25,000 earnest money payment. They do not cite any portion of the record to support the "undisputed facts at trial" that allegedly reveal the source of the earnest money payment. More importantly, they do not refer to any evidence suggesting the additional amounts were intended to be capital contributions or otherwise address the court's finding that Russell and Mary "agreed to advance $340,000 to consummate the purchase of Oasis upon the understanding that $170,000 would be repaid."[4] Nor do they provide any authority to support the suggestion that ownership interests must be allocated according to the amount of cash paid toward a purchase, rather than by the amount intended as a capital contribution in exchange for an ownership interest as provided in § 29-701(B). Therefore, they have waived this argument on appeal and we do not address it further. *See* Ariz. R. Civ. App. P. 13(a)(6) (appellate brief argument shall

---

[4] In its ruling on the Sholes' motion for a new trial, the trial court noted it had considered "numerous arguments on the capital contributions made," including "that $170,000 was a premarital gift from Bruce to Judy as a contribution for the Fernandos, and second, that it was a loan from [Russell and Mary] to Judy on behalf of the Fernandos."

contain "citations to the authorities, statutes and parts of the record relied on"); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393-94 n.2 (App. 2007) (appellant's failure to develop and support argument waives issue on appeal).

*Bruce's Abandonment of Ownership Interest*

¶17 The Sholes next argue the trial court erred in ruling that Bruce had "'abandoned' $163,511[] of cash capital" contributed to Oasis. However, the court did not find Bruce ever had made any capital contributions to Oasis with an agreement to exchange those for an ownership interest—only that he had paid $163,511 amount toward the ranch property's purchase price. As discussed above, § 29-701(B) provides one must prove the members of the LLC agreed or consented to exchange a capital contribution for an interest in the LLC. Substantial evidence supports the conclusion that Bruce had no such agreement and therefore no interest in Oasis. The original articles of organization for Oasis did not list Bruce as an interest-owning member. And, Bruce testified at trial that he had "never been a member" of Oasis and that he had filed affidavits in previous lawsuits stating he was not an owner because he had "never been on any of the paperwork as an owner." Therefore, the court did not err in ruling Bruce has no ownership interest in Oasis.

**Camino Verde House**

¶18 The trial court determined title to the Camino Verde house was held by Russell and Mary one-half in a constructive trust for the claims of Bruce's creditors and one-half in a resulting trust for Judy. The Sholes argue the court did not have jurisdiction to determine ownership of the Camino Verde house because the issue never was raised in

the pleadings.[5]  However, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Ariz. R. Civ. P. 15(b).

¶19        In the joint pretrial statement the Fernandos submitted contested issues of law, including:  "Are Russell and Mary Sholes holding the Camino Verde home as nominees for Bruce and/or Judy?"  In response, the Sholes filed a "legal memorandum re[garding] the Fernandos' nominee theory" recognizing the Fernandos had alleged Russell and Mary held various properties as nominees for Bruce and explaining why jury instructions on resulting trusts were appropriate.  The Sholes proposed jury instructions on the principle of resulting trusts, and the jury was instructed on the principles of resulting and constructive trusts.  The jury also was provided with a verdict form asking it to determine whether Russell and Mary "hold the Camino Verde House for the benefit of Bruce and Judy."  The Fernandos argued the purchase money for the Camino Verde house came from Bruce's law office and the mortgages and taxes were paid by Bruce and Judy.

¶20        The trial court determined Russell and Mary held title to the Camino Verde house in a constructive trust for Bruce's creditors as to half and a resulting trust as to the other half for Judy because Bruce had "attempted to avoid his creditors by holding

---

[5]The Sholes raise numerous sub-issues related to the Camino Verde house determination that are unsupported with citation to authority or the record.  We confine ourselves to addressing the arguments as they are presented in the argument section of the opening brief and are supported properly, as all other issues are waived.  *See* Ariz. R. Civ. App. P. 13(a)(6); *Polanco*, 214 Ariz. 489, n.2, 154 P.3d at 393-94 n.2.

13

various assets in the name of Russell and Mary." This determination followed from the issue raised by the Fernandos and presented in the jury instructions and interrogatories. *See Turley v. Ethington*, 213 Ariz. 640, ¶ 10, 146 P.3d 1282, 1285 (App. 2006) (imposition of constructive trust appropriate when property acquired such that holder of title may not in good conscience retain interest); *Toth v. Toth*, 190 Ariz. 218, 220, 946 P.2d 900, 902 (1997) (resulting trust arises in favor of person furnishing purchase money for property purchased in name of another).

¶21        In their oral motion for summary judgment on the nominee theory, the Sholes argued the nominee theory did not "apply to this case at all," arguing in the alternative that the jury should be instructed on resulting trust theory. And when the Fernandos argued that "if the court is going to give instructions on resulting trusts . . . the court will have to give an instruction on constructive trust," the Sholes did not object to giving a constructive trust instruction. By requesting jury instructions on the principle of resulting trusts and arguing its applicability, the Sholes consented to trying the issue of whether Russell and Mary held the Camino Verde house for the benefit of Bruce and Judy as if it had been raised in the pleadings. *See* Ariz. R. Civ. P. 15(b). Therefore, we agree with the trial court that any error regarding the Camino Verde house "was either waived or induced by [the Sholes]." *See Schlecht v. Schiel*, 76 Ariz. 214, 220, 262 P.2d 252, 256 (1953) ("[O]ne who deliberately leads the court to take certain action may not upon appeal assign that action as error.").

¶22        The Sholes also argue that "only the Dissolution Court ha[d] the jurisdiction to determine whether the interests acquired by [Judy or Bruce] in the Camino

Verde House are separate or community in nature" because that issue was raised by Judy in her petition for dissolution. However, the trial court did not determine whether Bruce or Judy hold their interests in the Camino Verde house as separate or community property. Moreover, the Sholes have not explained how the court's determination that Russell and Mary hold the Camino Verde house in trust for Bruce and Judy prevents the dissolution court from characterizing Bruce and Judy's interests as community or separate. *See* Ariz. R. Civ. App. P. 13(a)(6); *Polanco*, 214 Ariz. 489, n.2, 154 P.3d at 393-94 n.2. Therefore, we find no error.

**Disposition**

¶23      For the foregoing reasons, we affirm. The Fernandos request an award of attorney fees pursuant to A.R.S. § 12-341.01. We grant their request upon compliance with Rule 21, Ariz. R. Civ. App. P.

/s/ *J. William Brammer, Jr.*
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

/s/ *Joseph W. Howard*
JOSEPH W. HOWARD, Chief Judge

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Judge

15