IN THE

# ARIZONA COURT OF APPEALS
DIVISION TWO

---

THE ESTATE OF JOSEFA U. DECAMACHO,
BY AND THROUGH PERSONAL REPRESENTATIVE
ESTELA GUTHRIE, BOTH INDIVIDUALLY AND
ON BEHALF OF ALL STATUTORY BENEFICIARIES,
*Plaintiffs/Appellants*,


*v.*


LA SOLANA CARE AND REHAB, INC., A UTAH CORPORATION;
INFINIA AT DOUGLAS, INC., A UTAH CORPORATION,
*Defendants/Appellees*.

No. 2 CA-CV 2013-0086
Filed January 14, 2014

---

Appeal from the Superior Court in Cochise County
No. CV2012000320
The Honorable John F. Kelliher Jr., Judge

**AFFIRMED IN PART; REVERSED IN PART**

---

COUNSEL

Knapp & Roberts, P.C., Scottsdale
By David L. Abney
*Counsel for Plaintiffs/Appellants*

Campbell, Yost, Clare & Norell, P.C., Phoenix
By Stephen C. Yost and Jeffrey McLerran
*Counsel for Defendants/Appellees*

---

**OPINION**

Presiding Judge Vásquez authored the opinion of the Court, in which Chief Judge Howard and Judge Miller concurred.

---

V Á S Q U E Z, Presiding Judge:

**¶1**        Estela Guthrie, as personal representative of the Estate of Josefa DeCamacho and on behalf of DeCamacho's statutory beneficiaries, appeals from the trial court's order compelling arbitration of her claims against La Solana Care and Rehab, Inc. and Infinia at Douglas, Inc. ("La Solana"). On appeal, Guthrie argues the signed contract containing an arbitration clause, upon which the court's order was based, is neither valid nor enforceable. She also contends the contract's arbitration clause does not apply to the statutory beneficiaries' claims brought under Arizona's Wrongful Death Act or to the estate's claims brought under the Adult Protective Services Act ("APSA"). For the reasons set forth below, we reverse the court's order compelling arbitration of the wrongful death claims but otherwise affirm.

## Factual and Procedural Background[1]

**¶2**        In 2007, Josefa DeCamacho was suffering from multiple cognitive and physical ailments, including "dementia, confusion,

---

[1]We view the facts in the light most favorable to upholding the trial court's ruling. *See Ruesga v. Kindred Nursing Ctrs., L.L.C.*, 215 Ariz. 589, ¶ 26, 161 P.3d 1253, 1261 (App. 2007) ("In view of the procedural mandate in [A.R.S.] § 12-1502(A) and the absence of any request for an evidentiary hearing, the trial court was authorized to make '[i]ncidental findings of fact,' to which we 'accord[] the usual [deference] given to such findings of fact in appellate review.'"), *quoting Maxwell v. Fid. Fin. Servs., Inc.*, 184 Ariz. 82, 87, 907 P.2d 51, 56 (1995) (first and second alterations in *Ruesga*).

short-term memory impairment, varying memory function, unsteady gait and balance problems." In early 2007, after DeCamacho recovered from a serious fall, her daughter, Estela Guthrie, decided to admit her into La Solana's skilled-nursing and short-term rehabilitative facility.

¶3 When Guthrie and DeCamacho first arrived at the La Solana facility, employees presented Guthrie with a "Resident Admission Agreement," which contained an arbitration clause. Although information for several of the blank spaces in the agreement had not been filled in, Guthrie signed on DeCamacho's behalf, and DeCamacho was admitted to the facility for housing and care.

¶4 La Solana continuously provided care for DeCamacho at the facility from 2007 until July 23, 2010, when she was injured after falling from her wheelchair outside the facility's front door. DeCamacho died six days later in a hospital. She was survived by her children, Ramiro Camacho, Candelario Camacho, and Guthrie, who was appointed as personal representative of DeCamacho's estate.

¶5 On May 18, 2012, Guthrie filed a lawsuit against La Solana, asserting an APSA claim on behalf of the estate, as well as wrongful death claims on behalf of DeCamacho's children. La Solana moved to dismiss the lawsuit and to compel arbitration pursuant to the admission agreement. Guthrie responded that the agreement was not a valid or enforceable contract and that the arbitration clause did not apply in any event to the APSA and wrongful death claims.[2] On January 22, 2013, the trial court summarily ruled in favor of La Solana, staying the proceedings until the parties completed arbitration.

---

[2]Guthrie also argued the contract violated the reasonable-expectations doctrine and was unconscionable, but she does not raise these issues on appeal. We therefore do not address them further.

¶6 Guthrie requested special action review, but this court declined jurisdiction because Guthrie had not followed "the procedure outlined by our supreme court in *Southern California Edison Co. v. Peabody Western Coal Co.*, 194 Ariz. 47, ¶¶ 16-20, 977 P.2d 769, 774-75 (1999)." *Estate of Josefa U. DeCamacho v. La Solana Care & Rehab*, No. 2 CA-SA 2013-0024 (order filed Apr. 11, 2013). At Guthrie's request, the trial court entered the necessary language to make its ruling appealable pursuant to Rule 54(b), Ariz. R. Civ. P. This appeal followed. We have jurisdiction pursuant to A.R.S. § 12-2101(A)(1). *See S. Cal. Edison Co.*, 194 Ariz. 47, ¶ 19, 977 P.2d at 775.

## Discussion

¶7 Guthrie argues the trial court erred in compelling arbitration because: (1) "[a]s a matter of basic contract law, the admission agreement and its arbitration clause are invalid and unenforceable," and (2) "[t]he arbitration clause applies to no claims in this case and does not bind the Estate of Josefa DeCamacho, its personal representative, or any statutory beneficiary."

¶8 "The trial court's review on a motion to compel arbitration is limited to the determination as to whether an arbitration agreement exists." *Nat'l Bank of Ariz. v. Schwartz*, 230 Ariz. 310, ¶ 4, 283 P.3d 41, 42 (App. 2012). "We must defer, absent clear error, to the factual findings upon which the trial court's conclusions are based." *Harrington v. Pulte Home Corp.*, 211 Ariz. 241, ¶ 16, 119 P.3d 1044, 1049-50 (App. 2005). To the extent the issues "require[] us to consider and interpret legal principles and statutes, . . . our review is de novo." *Smith v. Pinnamaneni*, 227 Ariz. 170, ¶ 7, 254 P.3d 409, 412 (App. 2011).

### I. Validity of the Contract

¶9 Guthrie argues "[t]he admission agreement and its arbitration clause are, under basic contract law, invalid and unenforceable because they do not contain a valid contract's elements." The validity and enforceability of a contract and arbitration clause are mixed questions of fact and law, subject to de

novo review.  *See Nickerson v. Green Valley Recreation, Inc.*, 228 Ariz. 309, ¶ 19, 265 P.3d 1108, 1117 (App. 2011) (contract); *Schoneberger v. Oelze*, 208 Ariz. 591, ¶ 12, 96 P.3d 1078, 1081 (App. 2004) (arbitration clause).

**¶10**　　　Section 12-1501, A.R.S., provides that "a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract."  *See also Schoneberger*, 208 Ariz. 591, ¶ 17, 96 P.3d at 1082 ("Arbitration is a creature of contract law."); *Broemmer v. Abortion Servs. of Phx., Ltd.*, 173 Ariz. 148, 150, 840 P.2d 1013, 1015 (1992) (enforceability of agreement to arbitrate determined by contract law principles).  Accordingly, "the fundamental prerequisite to arbitration is the existence of an actual agreement or contract to arbitrate."  *Schoneberger*, 208 Ariz. 591, ¶ 17, 96 P.3d at 1082.

**¶11**　　　Quoting the Restatement (Second) of Contracts § 33(1) (1981), Guthrie argues that the admission agreement lacks sufficient specificity and therefore "cannot . . . form a contract."  In particular, she maintains the agreement never went into effect because the "specific clause" providing for the effective date of the agreement had not been filled in.[3]  A valid contract is formed when there is an

---

[3]In the statement of facts section of her opening brief, Guthrie also asserts, among other things, that the agreement "was undated[,] . . . did not name the facility to which it supposedly applied[,] . . . lacked any signature by anyone on behalf of the nursing home[, and] . . . lacked the mandated statement explaining why the relevant 'Resident' (Josefa DeCamacho) was unable to sign the agreement."  But Guthrie does not argue or support these assertions in her opening brief's argument section.  Therefore, we typically would not consider them as part of her argument.  *See Sholes v. Fernando*, 228 Ariz. 455, n.1, 268 P.3d 1112, 1114 n.1 (App. 2011).  Moreover, these assertions do not, in any event, affect our analysis below in light of DeCamacho and La Solana's three-year performance under the

offer, an acceptance, consideration, *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, ¶ 7, 270 P.3d 852, 855 (App. 2011), and sufficient certainty of terms so that the obligations involved can be determined, *Schade v. Diethrich*, 158 Ariz. 1, 9, 760 P.2d 1050, 1058 (1988). But "[t]he requirement of certainty is not so much a contractual validator as a factor relevant to determining . . . whether the parties manifested assent or intent to be bound." *Id.* "Any requirement of 'reasonable certainty' is satisfied if the agreement that was made simply provides 'a basis for determining the existence of a breach and for giving an appropriate remedy.'" *Id.* at 10, 760 P.2d at 1059, *quoting* Restatement (Second) of Contracts § 33(2).

> The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.
>
> . . . .
>
> . . . But the actions of the parties may show conclusively that they have intended to conclude a binding agreement, even though one or more terms are missing or are left to be agreed upon. *In such cases courts endeavor, if possible, to attach a sufficiently definite meaning to the bargain.*

*Schade*, 158 Ariz. at 9, 760 P.2d at 1058, *quoting* Restatement § 33(3), cmt. a (second omission and emphasis in *Schade*). And, "[t]he fact that [both parties] . . . ha[ve] begun performance is nearly always evidence that they regard the contract as consummated and intend to be bound thereby." *Id.* at 10, 760 P.2d at 1059 (internal quotation

---

contract's terms. *See Schade v. Diethrich*, 158 Ariz. 1, 10, 760 P.2d 1050, 1059 (1988).

omitted); *see also* Restatement § 22 cmt. b ("Offer and acceptance become still less important after there have been repeated occasions for performance . . . ."). Here, DeCamacho resided at the La Solana facility for over three years. We therefore have little difficulty concluding that DeCamacho and La Solana entered into a valid and enforceable contract.

**¶12** We also disagree with Guthrie's related argument that the arbitration clause is unenforceable because it "has no reasonable certainty on the procedures and terms of the purported arbitration." If an arbitration agreement does not so provide, the court "shall appoint one or more arbitrators," A.R.S. § 12-1503, who "shall appoint a time and place for the hearing," A.R.S. § 12-1505(1), at which "[t]he parties are entitled to be heard, to present evidence material to the controversy and to cross-examine witnesses appearing at the hearing," A.R.S. § 12-1505(2). Thus, even when an arbitration agreement does not specify the procedures and terms relating to arbitration, the statutes clearly do.

**¶13** Guthrie nevertheless contends that, as between La Solana and the statutory beneficiaries and estate, there was no offer, acceptance, consideration, specificity of terms, or mutual assent. She therefore maintains "[t]he arbitration clause cannot bind the Plaintiffs because they are third parties who never agreed to arbitrate anything."[4] We agree that, although Guthrie signed the agreement on behalf of DeCamacho, she was not a party to the

---

[4] In her reply brief, Guthrie contradicts this statement by claiming she "did not sign for her mother; [she] only signed as a 'Responsible Party.'" Because Guthrie did not make this argument in the trial court, we do not consider it on appeal. *See Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, ¶ 18, 169 P.3d 120, 125 (App. 2007); *see also Sholes*, 228 Ariz. 455, n.2, 268 P.3d at 1114 n.2 (disregarding portions of reply brief not rebutting answering brief). Instead, we rely on Guthrie's preliminary statement, in which she asserts she was "[a]cting for her mother" when she signed the admission agreement disputed in this case.

contract. *See Ferrarell v. Robinson*, 11 Ariz. App. 473, 475, 465 P.2d 610, 612 (1970) (person "who signs an agreement as the agent of a fully disclosed principal is not a party to that agreement"). "Nonsignatories, however, can be required to arbitrate under certain circumstances." *Smith*, 227 Ariz. 170, ¶ 23, 254 P.3d at 416. "Arbitration rests on an exchange of promises. Parties to a contract may decide to exchange promises to substitute an arbitral for a judicial forum. Their agreement to do so may end up binding (or benefitting) nonsignatories." *Schoneberger*, 208 Ariz. 591, ¶ 20, 96 P.3d at 1083. We therefore turn our attention to the arbitration clause.

## II.    Scope of Arbitration Clause

¶14       Guthrie argues "[t]he arbitration clause does not apply to any disputes or events that are relevant to the lawsuit." The interpretation of a contract is a question of law we review de novo. *Grosvenor Holdings, L.C. v. Figueroa*, 222 Ariz. 588, ¶ 9, 218 P.3d 1045, 1050 (App. 2009). The purpose of contract interpretation is to determine and give effect to the parties' intent. *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 152, 854 P.2d 1134, 1138 (1993). "'Where the intent of the parties is expressed in clear and unambiguous language, there is no need or room for construction or interpretation and a court may not resort thereto.'" *Grosvenor Holdings, L.C.*, 222 Ariz. 588, ¶ 9, 218 P.3d at 1050, *quoting Mining Inv. Grp., LLC v. Roberts*, 217 Ariz. 635, ¶ 16, 177 P.3d 1207, 1211 (App. 2008).

¶15       The rules of contract interpretation apply equally in the context of arbitration clauses. "Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co.*, 194 Ariz. 47, ¶ 11, 977 P.2d at 773.

¶16       Here, the arbitration clause states as follows:

It is understood that any dispute as
to medical malpractice, that is as to

whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently, or incompetently rendered, will be determined by submission to arbitration as provided by State law, and not by a lawsuit or court process except as State law provides for judicial review of arbitration proceedings. All parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.

The Resident and Facility further agree that any dispute arising between them from torts, contracts, or otherwise, including any claims for punitive damages and any actions brought on the behalf of the Resident by third parties, but excepting claims pertaining to the amount of the Facility's charges, shall be submitted upon the request of either the Resident or the Facility to arbitration as provided by State law.

¶17　　　　Because the language is clear and unambiguous, we apply it as written. *See United Cal. Bank v. Prudential Ins. Co.*, 140 Ariz. 238, 259, 681 P.2d 390, 411 (App. 1983); *Mining Inv. Grp., LLC*, 217 Ariz. 635, ¶ 16, 177 P.3d at 1211. Although the first sentence of the clause broadly encompasses "any dispute as to medical malpractice," the second sentence limits the first by providing that "[a]ll parties to this contract" agree to arbitrate "any such dispute." Put simply, the first paragraph only requires arbitration of medical malpractice claims brought by or on behalf of DeCamacho against La Solana.

¶18 The second paragraph of the arbitration clause similarly provides that the "Resident and Facility further agree" to arbitrate "any dispute arising between them from torts, contracts, or otherwise, including any claims for punitive damages and any actions brought on behalf of the Resident by third parties." Like the preceding paragraph, this language does not purport to bind the rights of anyone other than DeCamacho and La Solana.

¶19 The second clause does make clear, however, that if a third party asserts such claims in an action brought on DeCamacho's behalf, the claim still shall be determined by an arbitrator. Therefore, to the extent the APSA and other claims originate from the rights of DeCamacho, they are subject to arbitration, despite the fact that a third party has initiated the lawsuit.

¶20 Guthrie further contends, however, that the APSA and wrongful death claims are "separate and independent" from the rights of DeCamacho and are not actions brought on her behalf. This issue raises questions of statutory interpretation, which we review de novo. *Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶ 6, 19 P.3d 1241, 1244 (App. 2001). "[W]e must construe the statute so as to fulfill legislative intent." *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, ¶ 6, 181 P.3d 219, 225 (App. 2008). If the statute's language is clear and unambiguous, we will apply that language "'without using other means of construction.'" *Id.*, *quoting Hughes v. Jorgenson*, 203 Ariz. 71, ¶ 11, 50 P.3d 821, 823 (2002).

¶21 An APSA claim is "a statutory civil cause of action" pursuant to A.R.S. § 46-455(B). *Cornerstone Hosp. of Se. Ariz., L.L.C. v. Marner*, 231 Ariz. 67, ¶ 22, 290 P.3d 460, 467 (App. 2012). The statute is designed to "protect[] vulnerable adults by imposing criminal penalties on and providing for civil enforcement against those who violate its terms." *Estate of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, ¶ 6, 266 P.3d 349, 351 (2011). In relevant part, § 46-455(B) provides:

> A vulnerable adult whose life or
> health is being or has been endangered or

injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care, that has assumed a legal duty to provide care or that has been appointed by a court to provide care to such vulnerable adult for having caused or permitted such conduct.

¶22 A cause of action under APSA "shall not be limited or affected by the death of the vulnerable adult." A.R.S. § 46-455(P). The cause of action thus continues as an "estate asset." *In re Estate of Winn*, 214 Ariz. 149, ¶ 20, 150 P.3d 236, 240 (2007). But the legislature only provided recovery for actual damages suffered by the vulnerable adult and not, for example, the claims others may have for loss of consortium or the "inherent value" of the life lost. *In re Estate of Winn*, 225 Ariz. 275, ¶¶ 8-11, 13, 237 P.3d 628, 630-31 (App. 2010). Thus, the estate's right to recovery under APSA is protected only if "the incapacitated or vulnerable adult could have brought the claim had he or she been alive." *In re Estate of Wyttenbach*, 219 Ariz. 120, ¶ 16, 193 P.3d 814, 818 (App. 2008). The estate's right is therefore derivative of DeCamacho's right to pursue such a claim.

¶23 In contrast, a wrongful death claim brought in Arizona is not wholly derivative of a decedent's rights. *Huebner v. Deuchle*, 109 Ariz. 549, 549-50, 514 P.2d 470, 470-71 (1973). Our wrongful death statute, A.R.S. § 12-611, provides in pertinent part:

When death of a person is caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action to recover damages in respect thereof, then, and in every such case, the person who or the corporation which would have been liable if death had not ensued shall be liable

11

> to an action for damages, notwithstanding
> the death of the person injured . . . .

**¶24** A wrongful death action must "be brought by and in the name of the surviving husband or wife, child, parent or guardian, or personal representative of the deceased person for and on behalf of the surviving husband or wife, children or parents, or if none of these survive, on behalf of the decedent's estate." A.R.S. § 12-612(A). The amount recovered is distributed to those same parties "in proportion to their damages." A.R.S. § 12-612(C). The potential damages include the "'loss of love, affection, companionship, consortium, personal anguish and suffering.'" *Vasquez v. State*, 220 Ariz. 304, ¶ 16, 206 P.3d 753, 759 (App. 2008), *quoting Mullen v. Posada del Sol Health Care Ctr.*, 169 Ariz. 399, 400, 819 P.2d 985, 986 (App. 1991). Section 12-611 thus "confers an original and distinct claim for the damages sustained by named statutory beneficiaries[; i]t is not derived from nor is it a continuation of claims which formerly existed in a decedent." *Huebner*, 109 Ariz. at 549-50, 514 P.2d at 470-71; *see also Schoenrock v. Cigna Health Plan of Ariz., Inc.*, 148 Ariz. 548, 550, 715 P.2d 1236, 1238 (App. 1985).

**¶25** Several jurisdictions also have addressed the scope of arbitration clauses in this context, and nearly all distinguish between derivative and independent claims in this manner. *See Ruiz v. Podolsky*, 237 P.3d 584, 591 n.2 (Cal. 2010). For example, those states that treat wrongful death actions as separate and distinct from the decedent's underlying claims do not bind claimants to the decedent's arbitration agreement. *See, e.g.*, *Daniels v. Sunrise Senior Living, Inc.*, 151 Cal. Rptr. 3d 273, 277-78 (Ct. App. 2013); *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, ¶ 19 (Ohio 2007); *Bybee v. Abdulla*, 189 P.3d 40, ¶ 40 (Utah 2008); *Woodall v. Avalon Care Ctr.-Fed. Way, LLC*, 231 P.3d 1252, ¶ 43 (Wash. Ct. App. 2010); *cf. Bush v. Horizon W.*, 140 Cal. Rptr. 3d 258, 264 (Ct. App. 2012) (negligent infliction of emotional distress claim is not derivative and thus not subject to arbitration agreement). But states that consider wrongful death actions as derivative of the decedent's claims conclude that the decedent's heirs are bound. *See, e.g.*, *Ballard v. Sw. Detroit Hosp.*,

327 N.W.2d 370, 371-72 (Mich. Ct. App. 1982); *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, No. 30,868, ¶¶ 8, 16, 2013 WL 5297138 (N.M. Ct. App. Sept. 16, 2013); *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 645-46 (Tex. 2009).

**¶26** We find the analysis of the Washington Court of Appeals in *Woodall* particularly informative. There, the court made the same distinction between wrongful death and survival statutes that we make between the wrongful death and APSA claims in this case:

> [For wrongful death claims,] the personal representative of the estate is merely a statutory agent or trustee acting in favor of the class designated in the statute, with no benefits flowing to the estate of the injured deceased. In other words, under no circumstances does the estate of the decedent benefit by the [wrongful death] action. Anything realized therefrom goes to the beneficiaries. A cause of action for wrongful death is not one which ever belonged to the decedent.
>
> . . . .
>
> . . . [But the survival] claims are an asset of [the] estate. They originated as [the decedent]'s existing causes of action which survived his death and continue[d] as an asset of his estate. Accordingly, [the personal representative] may assert these claims against Avalon . . . . [But u]nder the ordinary contract principle of agency, Avalon may properly require those claims to be arbitrated under its agreement with [the decedent].

*Woodall*, 231 P.3d 1252, ¶¶ 27, 29 (second and sixth alterations in *Woodall*) (internal quotations omitted).

**¶27** We conclude that an APSA claim is derivative of the decedent's rights, whereas a wrongful death claim is independently held by the decedent's statutory beneficiaries. Therefore, the APSA claim is brought on behalf of DeCamacho's estate by Guthrie as personal representative and squarely falls within the scope of the arbitration clause. Conversely, the wrongful death claim, brought by Guthrie on behalf of herself, Ramiro Camacho, and Candelario Camacho, is not subject to the terms of the admission agreement's arbitration clause.[5]

**¶28** Citing *Jeanes v. Arrow Insurance Co.*, 16 Ariz. App. 589, 494 P.2d 1334 (1972), La Solana nevertheless argues that the statutory beneficiaries are bound by the arbitration clause because they are third-party beneficiaries. The issue in *Jeanes* was whether an automobile passenger injured in a vehicle collision was subject to the arbitration clause of the driver's uninsured motorist insurance policy. 16 Ariz. App. at 589, 494 P.2d at 1334-35. The trial court granted judgment in favor of the insurance company, thereby sending the case to arbitration. *Id.* at 590, 494 P.2d at 1335. On appeal, this court affirmed. *Id.* at 592, 494 P.2d at 1337. We explained that, although the passenger did not sign the contract, she was a third-party beneficiary: "The rights here involved were created by that contract, and in order to accept benefits under that contract she must accept and abide by the terms of the contract." *Id.*

**¶29** This case, however, is distinguishable from *Jeanes* because the statutory beneficiaries did not accept, nor are they

---

[5] Because we have concluded the plain language of the admission agreement does not bind the statutory beneficiaries as parties to the contract, we need not address the broader question of whether express language in the agreement purporting to bind the statutory heirs to arbitrate their wrongful death claims would have been valid and enforceable.

seeking, any benefits under the contract. *See also Schoneberger*, 208 Ariz. 591, ¶ 13, 96 P.3d at 1081 (defendants argued plaintiffs could not "demand benefits under the Trusts without accepting all of their terms"). Rather, the statutory beneficiaries are seeking redress under the wrongful death statute. As discussed above, the admission agreement applied to claims brought by and on behalf of DeCamacho. Thus, the statutory beneficiaries are not third-party beneficiaries.

¶30 Relying on *Schoenrock*, 148 Ariz. at 550, 715 P.2d at 1238, La Solana argues that Arizona "permits an action for wrongful death only if the decedent could have maintained an action had the person lived." La Solana reasons that "because [DeCamacho] would have only been entitled to pursue her claims through arbitration, the [statutory beneficiaries'] wrongful death claims are also subject to arbitration." Again, *Schoenrock* is distinguishable.

¶31 In *Schoenrock*, the decedent settled his medical malpractice lawsuit against the defendants for failure to timely diagnose lung cancer. 148 Ariz. at 548-49, 715 P.2d at 1236-37. After the decedent passed away, his wife brought a wrongful death lawsuit against those same parties. *Id.* at 549, 715 P.2d at 1237. The trial court granted summary judgment in favor of the defendants, and this court affirmed. *Id.* at 549, 551, 715 P.2d at 1237, 1239. We explained that "even if the decedent's injury had not resulted in death, he still would be precluded from maintaining an action because of the settlement." *Id.* at 551, 715 P.2d at 1239. Accordingly, we concluded that "the decedent's settlement and release of his personal injury claim prior to death extinguished any claim for wrongful death." *Id.* By contrast, here, there was no settlement and release of DeCamacho's claims.

¶32 Moreover, La Solana places too much emphasis on the language in § 12-611 that the decedent would have been "entitled . . . to maintain an action to recover damages . . . if death had not ensued." Section 12-611 does not specify that a wrongful death claim must be pursued in exactly the same manner, such as through arbitration, as one brought by the decedent. Rather, "the phrase

15

relied upon by [La Solana] is merely descriptive of the nature of the wrong committed to determine if a cause of action exists as a matter of substantive law for the alleged wrongful conduct." *Frongillo v. Grimmett*, 163 Ariz. 369, 370, 788 P.2d 102, 103 (App. 1989).

¶33 We therefore conclude that although the APSA claim falls under the terms of the admission agreement and is subject to arbitration, the statutory beneficiaries are not required to arbitrate their wrongful death claims against La Solana pursuant to the arbitration clause of the admission agreement. The trial court erred in determining otherwise.[6] *See Harrington*, 211 Ariz. 241, ¶ 16, 119 P.3d at 1049-50; *Smith*, 227 Ariz. 170, ¶ 7, 254 P.3d at 412.

## Conclusion

¶34 For the reasons stated above, we reverse the trial court's order compelling arbitration of the wrongful death claims, but otherwise affirm its order.

---

[6] This result has no effect on the trial court's stay of proceedings. *See* A.R.S. § 12-1502; *Hallmark Indus., L.L.C. v. First Systech Int'l, Inc.*, 203 Ariz. 243, ¶ 11, 52 P.3d 812, 815 (App. 2002) ("[I]f an action or proceeding involves multiple, inseparable claims, only some of which are arbitrable, the court action must be stayed pending the arbitration.").