NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

CACH, LLC, a limited liability company, *Plaintiff/Appellee*,

*v.*

NANCY M. MARTIN and ROBERT MARTIN, *Defendants/Appellants*.

No. 1 CA-CV 14-0504
FILED 9-24-2015

Appeal from the Superior Court in Maricopa County
No. CV 2012-017288
The Honorable Robert H. Oberbillig, Judge

**AFFIRMED**

COUNSEL

Neuheisel Law Firm, P.C., Tempe
By Kathryn A. Neuheisel, Beth Bruno, Kerry Osborne
*Counsel for Plaintiff/Appellee*

Nancy and Robert Martin, Tempe
*Defendants/Appellants*

**MEMORANDUM DECISION**

Presiding Judge Margaret H. Downie delivered the decision of the Court, in which Judge Patricia A. Orozco and Judge Maurice Portley joined.

**D O W N I E**, Judge:

¶1        Nancy and Robert Martin appeal from the entry of summary judgment in favor of CACH, LLC.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        CACH sued the Martins for breach of contract, alleging a default on a credit card account with Citibank — CACH's predecessor-in-interest.  The Martins moved to stay or dismiss the action to allow for arbitration, as contemplated by the credit card agreement.  CACH did not object to arbitration and asked the court to stay the proceeding "for a reasonable period of time" to permit the Martins to pursue arbitration.

¶3        In January 2013, the trial court stayed the proceedings to allow arbitration to proceed.  After the case was dismissed off the inactive calendar, the trial court reinstated the action, finding "good cause exists to reinstate the case so that it can proceed to resolution on the merits."

¶4        CACH filed a motion for summary judgment in October 2013, which the Martins opposed.  The trial court granted CACH's motion, and the Martins filed a timely notice of appeal.  We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

### I.        Arbitration Clause

¶5        The Martins contend that "while it may be the <u>defendant</u> who asks for arbitration of a debt claim of the plaintiff, it is the <u>plaintiff</u>, in a setting such as this, that must be the moving party to commence the arbitration since it is the plaintiff who seeks ultimate relief or judgment (on the facts here)."  We disagree.

¶6        Arbitration agreements are contractual in nature, and their interpretation is a question of law that we review *de novo*.  *See Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 234 Ariz. 18, 20–21, ¶¶ 9–10, 316 P.3d 607, 609–10 (App. 2014); *see also Burke v. Voicestream Wireless Corp. II*, 207 Ariz. 393, 395, ¶ 11, 87 P.3d 81, 83 (App. 2004).  An agreement to arbitrate is construed according to its language and the circumstances in which it was made.  *U.S. Insulation, Inc. v. Hilro Constr. Co.*, 146 Ariz. 250, 257, 705 P.2d 490, 497 (App. 1985).  "If the contractual

language is clear, we will afford it its plain and ordinary meaning and apply it as written." *Liberty Ins. Underwriters v. Weitz Co.*, 215 Ariz. 80, 83, ¶ 8, 158 P.3d 209, 212 (App. 2007).

¶7        The arbitration clause at issue here provides that disputes "may" be resolved by binding arbitration and states, in pertinent part:

> *Agreement to Arbitrate:* Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").
>
> . . . .
>
> **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. . . . You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows . . . .
>
> **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so.

¶8        The unambiguous language of the arbitration clause requires the party opting for arbitration to initiate the proceedings and pay the filing fee. An account holder may request a fee waiver or ask the arbitrator to waive the fee for good cause shown, but nothing in the record on appeal suggests that the Martins did so. The arbitration clause does not obligate CACH to pay the filing fee unless it finds "good reason" to do so or unless the arbitrator so orders. Finally, neither legal authority nor

the account agreement supports the Martins' assertion that requiring them to initiate arbitration would somehow shift the burden of proof.

**¶9** The trial court gave the Martins a reasonable opportunity to pursue arbitration, and when they failed to complete the necessary steps, it properly reinstated the case for resolution on the merits.

## II.     Summary Judgment

**¶10** We review the trial court's grant of summary judgment *de novo*. *Emmett McLoughlin Realty, Inc. v. Pima Cnty.*, 212 Ariz. 351, 353, ¶ 2, 132 P.3d 290, 292 (App. 2006). "A plaintiff's motion must stand on its own and demonstrate by admissible evidence that the plaintiff has met its burden of proof and that it is entitled to judgment as a matter of law." *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 211, ¶ 1, 292 P.3d 195, 197 (App. 2012). "It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, ¶ 30, 83 P.3d 1103, 1111 (App. 2004). We view the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003). We consider only the record before the trial court at the time of its ruling. *See Phoenix Baptist Hosp. & Med. Ctr., Inc. v. Aiken*, 179 Ariz. 289, 292, 877 P.2d 1345, 1348 (App. 1994).

**¶11** The Martins contend an affidavit from Peter Huber that accompanied CACH's motion was inadmissible hearsay that could not support summary judgment. We will uphold a trial court's ruling regarding the admissibility of evidence in summary judgment proceedings absent an abuse of discretion. *Mohave Elec. Co-op., Inc. v. Byers*, 189 Ariz. 292, 301, 942 P.2d 451, 460 (App. 1997). We find no abuse of discretion here.

**¶12** In granting CACH's summary judgment motion, the court ruled that it was "properly supported by admissible evidence." Specifically, the court concluded the business records exception to the hearsay rule applied. We agree.

**¶13** A business record is admissible, regardless of its classification as hearsay, if the custodian testifies it was: (1) "made at or near the time by -- or from information transmitted by -- someone with knowledge;" (2) kept in the course of a regularly conducted business activity; (3) making the record was a regular practice; and (4) "the opponent does not show that the source of information or the method or

circumstances of preparation indicate a lack of trustworthiness." Ariz. R. Evid. 803(6). A custodian need not have personally assembled the records. *State v. Parker*, 231 Ariz. 391, 402–03, ¶ 33, 296 P.3d 54, 65–66 (2013). However, mere recitation of Rule 803(6) language in an affidavit is insufficient. The affidavit must substantively address the accompanying evidence well enough to establish its credibility and allow a court to review its accuracy. *See Wells Fargo*, 231 Ariz. at 213–14, ¶ 18, 292 P.3d at 199–200.

**¶14** Huber's affidavit established him as the custodian of records for CACH, and it also satisfied each element of the business records exception. Huber avowed that CACH's books and records contained account records and information from the original creditor (many of which accompanied his affidavit) and he substantively discussed those records — making it clear that CACH relied on the Citibank records in its daily operations. *See Parker*, 231 Ariz. at 402, ¶ 33, 296 P.3d at 65 ("Trustworthiness and reliability stem from the fact that Capital One regularly relies on the information that third parties submit as part of their ordinary course of business.").

**¶15** In arguing Huber's affidavit was substantively insufficient, the Martins rely heavily on *Wells Fargo* — a case in which we concluded a paralegal's affidavit was insufficient to sustain summary judgment. 231 Ariz. at 214, ¶ 19, 292 P.3d at 200. We stated:

> In his affidavit, the paralegal made a general avowal that he is the custodian of records and that he personally reviewed records that established the amount of the Allens' indebtedness to Wells Fargo. Those records were neither described nor attached, nor was there anything in the affidavit to provide a reviewing court with the means to evaluate the accuracy of the paralegal's calculation of the amount claimed to be due.

*Id*. at ¶ 18.

**¶16** The affidavit and documents in this case differ materially from those at issue in *Wells Fargo*. Huber specifically referred to the attached documents and described how and why they were accurate. Additionally, Huber attached and referred to several account statements that identified specific purchases, the balance owed, and interest information. The level of detail contrasts starkly with the single statement

found in the affidavit in *Wells Fargo*, which summarily recited an amount owed and little else. *See id.* at 211, 214, ¶¶ 4, 18, 292 P.3d at 197, 200.

**¶17** The purpose of a custodian's affidavit is to authenticate evidence. *Id.* at 214, ¶ 19, 292 P.3d at 200. Huber's affidavit provided sufficient detail to authenticate the attached documents such that the trial court did not abuse its discretion in concluding they were admissible under Rule 803(6) as business records. Further, the Martins admitted the account statements were genuine and did not identify any unreliable or inaccurate information in them.

**¶18** CACH also provided a copy of a credit card agreement. Although the Martins consistently noted the agreement was not signed, a signature is not necessary because use of a credit card is sufficient to bind the cardholder to the terms and conditions of the account. *See* A.R.S. § 44-7802. Moreover, the Martins never disclaimed a contractual obligation to pay CACH. On the contrary, they admitted receiving account statements and conceded "that they have failed to pay all of the charges made on the cards, and that the account is in breach."

**¶19** Coupled with the Martins' admissions, CACH's proffered evidence was sufficient to establish the existence of a contract and the Martins' breach of that contract. CACH also established the requisite damages. Each credit card statement provided specific information regarding accrual of the debt. The Martins did not submit controverting evidence. Instead, they conceded that "[t]he debt here was run up by defendants' daughter who did not pay for what she charged, apparently." We thus conclude that CACH submitted "undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim."[1] *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 293, ¶ 20, 229 P.3d 1031, 1035 (App. 2010).

## CONCLUSION

**¶20** For the foregoing reasons, we affirm the judgement of the superior court. We deny CACH's request for attorneys' fees incurred on appeal because it fails to comply with ARCAP 21(a)(2) (fee request "must

---

[1] The Martins also contend another document accompanying Huber's affidavit — an affidavit of Lana Handy — was inadmissible because she was not listed as a witness. Handy's affidavit is not necessary to affirm the trial court's ruling, so we need not address its admissibility.

specifically state the statute, rule, decisional law, contract, or other authority for an award of attorneys' fees"). CACH, however, is entitled to recover its taxable costs on appeal upon compliance with ARCAP 21.



Ruth A. Willingham · Clerk of the Court
FILED: ama