**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 2, 2016**

# In the Court of Appeals of Georgia

A15A2268. NORTON et al. v. UNITED HEALTH SERVICES OF   DO-111
    GEORGIA, INC. et al.

DOYLE, Chief Judge.

Bernard Norton, by and through Kim Norton, sued United Health Services of Georgia, Inc.; UHS-Pruitt Holdings, Inc.; PruittHealth, Inc.; PruittHealth Care Management, Inc.; PruittHealth-Property Management, LLC; PruittHealth Consulting Services, Inc.; PruittHealth Therapy Services, Inc.; PruittHealth-Toccoa, LLC; and Tracy Ivester, NHA (collectively, "the defendants") for the wrongful death of Bernard's wife, Lola Norton, alleging, among other things, that negligence at a nursing home owned and/or operated by the defendants caused her death. The defendants moved to dismiss the complaint or, alternatively, to stay the proceedings and compel arbitration of all claims. The trial court granted the motion to stay and

compel arbitration, and this Court granted Bernard's application for interlocutory appeal. For the reasons that follow, we reverse the trial court's order compelling arbitration.

The underlying facts are undisputed for purposes of this appeal. From April 25, 2013, until her death on April 18, 2014, Lola was a resident of PruittHealth-Toccoa, a facility owned, operated, and managed by defendants. While at the facility, Lola allegedly suffered injuries and harm, including falls, fractures, weight loss, and death. Bernard, by Kim Norton through power of attorney, and on behalf of Lola's wrongful death beneficiaries, filed a complaint in superior court asserting several causes of action against the defendants, including negligence, medical malpractice, a statutory cause of action pursuant to Georgia's Bill of Rights for Residents in Long-Term Care Facilities (OCGA § 31-8-100 et. seq.), fraud, and wrongful death. According to the complaint, Lola's injuries and death were the result of the defendants' failure to provide adequate care and staff.

The defendants sought to compel arbitration based on the arbitration agreement. The trial court granted the motion to stay the proceedings, specifically finding that a wrongful death claim is derivative of a decedent's right of action, and finding that because the arbitration agreement was signed by someone with a general

2

power of attorney, it is binding on all claims, including the wrongful death claims asserted by parties who were not signatories to the arbitration agreement. This interlocutory appeal followed.

At the time of Lola's admission to the facility, Kim, as general power of attorney for Lola,[1] signed an arbitration agreement, which states that claims subject to arbitration include

> [a]ny and all claims or controversies arising out of or in any way relating to . . . the Patient/Resident's stay at, or the care or services provided by, the Healthcare center, or any acts or omissions in connection with such care or services . . . whether sounding in breach of contract, tort, or breach of statutory or regulatory duties.[2]

---

[1] The general power of attorney document appointed Kim as Lola's "true and lawful attorney-in-fact and hereby delegate[d] to said attorney-in-fact full power and authority for [Lola] in [her] name, place[,] and stead to do and perform all things that [Lola] could do [herself] in the transaction of any business of [hers], on such terms and in such manner as said attorney-in-fact may deem appropriate."

[2] The arbitration agreement contains a provision stating that the nursing home's "business activities substantially affect, relate to, and involve interstate commerce. . . . [Therefore], this Agreement shall be governed by and enforced under federal law, specifically, the Federal Arbitration Act ["FAA"] (9 U.S.C. §§ 1-6), as opposed to state arbitration law, notwithstanding any provision of state law or any other understanding or agreement between the parties. The parties specifically exclude the application of the Georgia Arbitration Code." In its order compelling arbitration, the trial court found that OCGA § 9-9-2 (c) (10), which exempts personal injury and wrongful death claims from arbitration is preempted, citing *Marmet Heath Care Ctr. v. Brown*, ___ U. S. ___ (132 SCt 1201, 182 LE2d 4280) (2012), and *Davidson v. A. G. Edwards & Sons, Inc.*, 324 Ga. App.

3

The parties also expressly agreed that the arbitration agreement would apply to wrongful death beneficiaries:

> *Parties*. This Agreement shall inure to the benefit of and bind the Patient/Resident and the Healthcare Center, their successors, assigns, and intended and incidental beneficiaries. . . . The term "Patient/Resident" shall include the Patient/Resident, his or her guardian, attorney-in-fact, agent, sponsor, representative, or any person whose claim is derived through or on behalf of the Patient/Resident, including, in addition to those already listed in this Paragraph, any parent, spouse, child, executor, administrator, heir, or survivor entitled to bring a wrongful death claim.

On appeal, Bernard argues that the arbitration agreement does not bind the wrongful death beneficiaries. We agree.

> The question of arbitrability, i.e., whether an agreement creates a duty for the parties to arbitrate the particular grievance, is undeniably an issue for judicial determination. In reviewing the denial of a motion to compel arbitration, we determine whether the trial court was correct as a matter of law. . . . Arbitration in Georgia is a matter of contract. As

---

172, 173 (1) (a) (748 SE2d 300) (2013) (holding that "[a]lthough this Court has not previously addressed whether the FAA preempts OCGA § 9-9-2 (c) (10), insofar as it exempts from arbitration 'personal bodily injury' claims, we find no reason why there should not be preemption in this regard as well. The FAA preempts any state law that conflicts with its provisions or undermines the enforcement of private arbitration agreements."). The parties do not challenge this ruling on appeal.

such, the construction of an arbitration clause in a contract is subject to the ordinary rules of contract construction.[3]

And when "determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."[4]

Here, as Bernard impliedly concedes, Kim bound Lola and her estate to arbitrate, requiring arbitration of the five counts in the complaint alleging medical malpractice, negligence, fraud, and the violation of Georgia's Bill of Rights for Residents in Long-Term Care Facilities.[5] Bernard challenges, however, the enforceability of the arbitration clause for the wrongful death claims brought by him and on behalf of Lola's beneficiaries.

---

[3] (Citation and punctuation omitted.) *DBGS, LLC v. Kormanik*, 333 Ga. App. 33, 34 (775 SE2d 283) (2015), quoting *Order Homes, LLC v. Iverson*, 300 Ga. App. 332, 332-333 (685 SE2d 304) (2009) and *Wedemeyer v. Gulfstream Aerospace Corp.*, 324 Ga. App. 47, 50 (1) (749 SE2d 241) (2013).

[4] (Punctuation omitted.) *DBGS*, 333 Ga. App. at 35, quoting *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F2d 840, 846 (II) (2nd Cir. 1987).

[5] We note however that neither Lola's estate's legal representative, executor, nor administrator is listed as a party plaintiff.

As the defendants point out, it is well-settled that in Georgia, "a suit for wrongful death is derivative to the decedent's right of action. A survivor cannot recover for the decedent's wrongful death if the decedent could not have recovered in . . . her own right."[6] But this does not end our analysis, which requires examination of the nature of a wrongful death claim.

"[A] wrongful death claim . . . is a claim belonging to [the survivors] of the [decedent] for the full value of the life of the decedent. It is not addressed to the injuries suffered by the decedent prior to death, but to the injury suffered by the beneficiaries resulting from the death of the decedent."[7] Thus, a wrongful death action presents a new, distinct, and separate cause of action,[8] as evidenced by the fact

---

[6] (Footnotes and punctuation omitted.) *Mowell v. Marks*, 269 Ga. App. 147, 149 (603 SE2d 702) (2004), quoting *Atlanta Cas. Co. v. Gordon*, 266 Ga. App. 666, 667 (598 SE2d 70) (2004), and citing *Turner v. Walker County*, 200 Ga. App. 565, 566 (1) (408 SE2d 818) (1991). See also *Smith v. Rowell*, 176 Ga. App. 100 (335 SE2d 461) (1985).

[7] (Citation and punctuation omitted.) *Pope v. Goodgame*, 223 Ga. App. 672, 676 (6) (b) (478 SE2d 636) (1996), quoting OCGA § 51-4-2.

[8] See *Vo v. Yamaha Golf Car Co.*, 267 Ga. App. 742, 744 (600 SE2d 594) (2005); *Smith v. Mem. Med. Center, Inc.*, 208 Ga. App. 26, 27 (1) (430 SE2d 57) (1993) ("[A]n individual's claim for wrongful death and an estate's claim for the decedent's pain and suffering are distinct causes of action. The plaintiff in his individual capacity and in his capacity as administrator are legally different persons.") (citations omitted).

that a wrongful death action has its own statute of limitations.[9] Thus, although any substantive defenses that would have been good against the decedent are good against her beneficiaries in a wrongful death action,[10] a procedural defense such as expiration of the statute of limitations may bar a claim by the decedent, but not a wrongful death action by her beneficiaries.[11]

"Arbitration is a matter of consent, not coercion, and a party can be compelled to arbitrate only upon a showing that he entered into an enforceable agreement to arbitrate."[12] Here, there is no evidence that Lola's wrongful death beneficiaries

---

[9] See *Clark v. Singer*, 250 Ga. 470, 471 (298 SE2d 484) (1983), superceded on other grounds by statute as stated in *Quinn v. Stafford*, 257 Ga. 608 (362 SE2d 49) (1987) (the statute of limitations for a wrongful death action arising out of medical malpractice begins to run from the date of death, not from the date of the negligent act or omission of the practitioner).

[10] See *Mowell*, 269 Ga. App. at 149.

[11] See *Clark*, 250 Ga. at 471-472. Cf. *Mowell*, 269 Ga. App. at 150 (declining to address whether a procedural defense should be applied derivatively to bar a wrongful death action).

[12] (Citation and punctuation omitted.) *Benedict v. State Farm Bank, FSB*, 309 Ga. App. 133, 139 (2) (709 SE2d 314) (2011), quoting *Volt Information Sciences v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U. S. 468, 479 (109 SCt 1248, 103 LE2d 488) (1989). See also *Life Care Centers of America v. Smith*, 298 Ga. App. 739, 741 (1) (681 SE2d 182) (2009) ("[An arbitration agreement] is, at base, a contract, and the Federal Arbitration Act does not require parties to arbitrate when they have not agreed to do so."). (punctuation omitted).

entered into an agreement to arbitrate their separate, distinct claims. And those claims never "belonged" to Lola, so neither she nor her power of attorney could bind the beneficiaries to arbitration with regard to their wrongful death claims.

Thus, although litigation of any tort claims by Lola's estate against the defendants is barred by the arbitration agreement, litigation of the wrongful death claims asserted by her beneficiaries is not so barred. Accordingly, the trial court erred by granting the defendants' motion to compel arbitration with regard to those claims.

*Judgment reversed. Phipps, P. J., and Boggs, J., concur*.