# IN THE SUPREME COURT OF IOWA

No. 15–2095

Filed October 21, 2016

Amended December 30, 2016

**MARY E. ROTH** and **MICHAEL A. ROTH,** Individually and as Coexecutors of the Estate of Cletus Roth, **ANNA M. ROTH,** Individually, and **BRADLEY E. ROTH,** Individually,

Plaintiffs,

vs.

**THE EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY** d/b/a **GOOD SAMARITAN SOCIETY - GEORGE,**

Defendant.

---

Certified questions of law from the United States District Court for the Northern District of Iowa, Mark W. Bennett, United States District Court Judge.

A federal district court certified two questions of law concerning adult children's loss-of-consortium claims in a suit against a nursing home. **CERTIFIED QUESTIONS ANSWERED.**

Pressley Henningsen and Benjamin P. Long of RSH Legal, P.C., Cedar Rapids, for plaintiffs.

Christopher P. Jannes and Kendall R. Watkins of Davis, Brown, Koehn, Shors & Roberts, Des Moines, for defendant.

**MANSFIELD, Justice.**

We have been asked to answer two certified questions of Iowa law in a tort case brought by the adult children of a former nursing home resident against the nursing home. The questions are as follows:

1. Does Iowa Code section 613.15 require that adult children's loss-of-parental-consortium claims be arbitrated when the deceased parent's estate's claims are otherwise subject to arbitration?

2. Does the fact that a deceased parent's estate's claims are subject to arbitration establish that it is impossible, impracticable, or not in the best interest of the decedent's adult children for the decedent's estate to maintain their claims for loss of parental consortium, such that the loss-of-consortium claims can be maintained separately in court, notwithstanding that the estate's claims must be arbitrated?

For the reasons discussed herein, we answer these questions as follows:

1. No.

2. It is not necessary to answer this question.

**I. Background Facts and Proceedings.**

On November 27, 2013, seventy-nine-year-old Cletus Roth was admitted to a forty-five-bed nursing facility operated by The Evangelical Lutheran Good Samaritan Society (Good Samaritan) in Lyon County. Approximately two weeks later, on December 12, Cletus's son Michael signed a detailed admission agreement with Good Samaritan relating to Cletus's stay. At that time, Michael had general healthcare powers of attorney for Cletus. Cletus's daughter Mary also had the same powers of attorney.

Part of the admission documentation was a separate two-page document entitled "RESOLUTION OF LEGAL DISPUTES." This item

stated at the top in boldface type, "**Please note that the Resident's agreement to arbitrate disputes is not a condition of admission or of continued stay.**" Beneath this sentence were a series of clauses:

A. **Resident's Rights.** Any legal controversy, dispute, disagreement or claim arising between the Parties hereto after the execution of this Admission Agreement in which Resident, or a person acting on his or her behalf, alleges a violation of any right granted Resident under law or contract shall be settled exclusively by binding arbitration as set forth in Section C. below. This provision shall not limit in any way the Resident's right to file formal or informal grievances with the Facility or the state or federal government.

B. **All Other Disputes.** Any legal controversy, dispute, disagreement or claim of any kind arising out of or related to this Admission Agreement, or the breach thereof, or, related to the care of stay at the Facility, shall be settled exclusively by binding arbitration as set forth in Section C. below. This arbitration clause is meant to apply to all controversies, disputes, disagreements or claims including, but not limited to, all breach of contract claims, all negligence and malpractice claims, all tort claims and all allegations of fraud concerning entering into or canceling this Admission Agreement. This arbitration provision binds all parties whose claims may arise out of or relate to treatment or service provided by the center including any spouse or heirs of the Resident.

C. **Conduct of Arbitration.** The Resident understands that agreeing to arbitrate legal disputes means that he/she is waiving his/her right to sue in a court of law and to a trial by jury and that arbitration is not a limitation of liability but merely shifts the Parties' dispute(s) to an alternate forum. The Resident shall indicate his/her willingness to arbitrate by informing the Facility by marking the YES or NO box below and signing and dating where indicated. . . .

D. **Governing Law.** The Parties acknowledge that the Facility regularly conducts transactions involving interstate commerce and that services provided by the Facility to the Resident involve interstate commerce. The Parties therefore agree that this Admission Agreement is a transaction involving interstate commerce. The Parties agree that this Resolution of Legal Disputes provision and all proceedings relating to the arbitration of any claim shall be governed by and interpreted under the Federal

Arbitration Act (FAA), 9 U.S.C. Sections 1-16 (or as amended or superseded).

In the middle of the second page were two boxes:

YES I DO wish to arbitrate disputes and I received a copy of this Resolution of Legal Disputes.

NO I DO NOT wish to arbitrate disputes.

Michael indicated that he wished to arbitrate disputes by approving the checking of the first box and then signing and dating the arbitration agreement.[1]

Following Cletus's death, on August 14, 2015, Mary and Michael as coexecutors of his estate—as well as Mary, Michael, and their siblings Anna and Bradley individually—filed an action against Good Samaritan. The petition alleged that the defendant had "negligently cared for Cletus . . . and violated numerous regulations, laws, rights, and industry standards, causing Cletus . . . personal injury, illness, harm, and eventual death . . . ." Five counts were set forth in the petition: "wrongful death, negligence, gross negligence, and/or recklessness," "breach of contract," "dependent adult abuse," "loss of consortium for [Mary, Michael, Anna, and Bradley]," and "punitive damages." Good Samaritan removed the case to federal court based on diversity of citizenship then moved to compel arbitration.

---

[1]We note that in a final rule published October 4, 2016, the Federal Centers for Medicare & Medicaid Services will prohibit nursing homes that receive Medicare or Medicaid funding from entering into this type of arbitration agreement:

A facility must not enter into a pre-dispute agreement for binding arbitration with any resident or resident's representative nor require that a resident sign an arbitration agreement as a condition of admission to the [long-term care] facility.

Medicare and Medicaid Programs; Reform of Requirements for Long-Term Care Facilities, 81 Fed. Reg. 68,688, 68,867 (Oct. 4, 2016) (to be codified at 42 C.F.R. pt. 483).

On December 7, the United States District Court for the Northern District of Iowa filed a memorandum opinion. It directed that the claims of Cletus's estate be submitted to arbitration. However, the district court asked this court to answer two certified questions of Iowa law relating to the adult children's loss-of-consortium claims.

## II. Standard Applicable to Certified Questions.

We have said before,

> It is within our discretion to answer certified questions from a United States district court. We may answer a question certified to us when (1) a proper court certified the question, (2) the question involves a matter of Iowa law, (3) the question "may be determinative of the cause . . . pending in the certifying court," and (4) it appears to the certifying court that there is no controlling Iowa precedent.

*Life Inv'rs Ins. Co. of Am. v. Estate of Corrado*, 838 N.W.2d 640, 643 (Iowa 2013) (citation omitted) (quoting Iowa Code § 684A.1).

Here we elect to answer the certified questions. They arrive to us from a proper court, they involve matters of Iowa law, they may be determinative of the cause, and there is no controlling Iowa precedent. *See Oyens Feed & Supply, Inc. v. Primebank*, 879 N.W.2d 853, 858 (Iowa 2016). Additionally, both parties urge us to answer the questions. *See id.*

## III. Analysis.

**A. First Certified Question: Does Iowa Code Section 613.15 Require Adult Children's Loss-of-Consortium Claims to Be Arbitrated When the Estate's Claims Are Otherwise Subject to Arbitration?** When a person dies due to the wrongful or negligent act of another, Iowa law authorizes the personal representative to commence a wrongful-death action on behalf of the estate. As we have explained,

> Iowa recognizes no common law action for wrongful death. Power to maintain such actions is entirely statutory. Our

first statute was enacted in 1851 as Code § 2501. That section is today § 611.20, a survival statute, which keeps alive for the benefit of his estate the cause of action which the deceased prior to his death could have brought had he survived the injury, with recovery enlarged to include the wrongful death.

*Egan v. Naylor*, 208 N.W.2d 915, 917 (Iowa 1973). Iowa Code section 611.20, the present statutory foundation for wrongful-death actions, provides, "All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." Iowa Code § 611.20 (2015). Furthermore, "Code §§ 611.20, 611.22 and 633.336 and their predecessors have consistently been held to vest the right to recover wrongful death damages exclusively in the estate representative." *Egan*, 208 N.W.2d at 918.

In addition, Iowa recognizes a cause of action for loss of consortium. When a minor child suffers injury or death, Iowa Rule of Civil Procedure 1.206 provides, "A parent, or the parents, may sue for the expense and actual loss of services, companionship and society resulting from injury to or death of a minor child." Iowa R. Civ. P. 1.206. Otherwise, such as here when a parent dies allegedly due to the wrongful act of another, Iowa Code section 613.15 provides,

> In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent, or both, as the case may be, in such sum as the jury deems proper; provided, however, recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same.

Iowa Code § 613.15.

So worded, Iowa Code section 613.15 empowers the administrator of a parent's estate, rather than the children, to bring an action for the children's loss of the parent's services. "In the case of a parent's death, the child's claim for loss of parental consortium should be brought by the decedent's administrator under section 613.15." *Audubon-Exira Ready Mix, Inc. v. Ill. Cent. Gulf R.R.*, 335 N.W.2d 148, 152 (Iowa 1983).

But although the personal representative normally files both claims, there is a critical difference between the wrongful death cause of action and the consortium cause of action. In the latter instance, damages "are to be distributed by the trial court [to the children] under section 633.336." *Id.* at 151–52. Iowa Code section 633.336 codifies this distinction:

> When a wrongful act produces death, damages recovered as a result of the wrongful act shall be disposed of as personal property belonging to the estate of the deceased; however, if the damages include damages for loss of services and support of a deceased spouse, parent, or child, the damages shall be apportioned by the court among the surviving spouse, children, and parents of the decedent in a manner as the court may deem equitable consistent with the loss of services and support sustained by the surviving spouse, children, and parents respectively.

Iowa Code § 633.336.

In our caselaw, we have reiterated these points:

> Authority to sue for lost services and the recovery belonged to the injured person rather than the deprived spouse or child in the action under section 613.15. If the person died, the only further recovery could be made under . . . section 613.15 in the case of death of a spouse or parent. Authority to sue under section 613.15 passed to the administrator but, under section 633.336, the recovery was to be apportioned to the spouse and children of the decedent in accordance with their loss.

*Madison v. Colby*, 348 N.W.2d 202, 207 (Iowa 1984). The cause of action for parental consortium is "to be commenced by . . . the parent's estate"

although "the ownership of the proceeds [is] in the child." *Roquet by Roquet v. Jervis B. Webb Co.*, 436 N.W.2d 46, 47 (Iowa 1989).

> [A] child has a cause of action for loss of parental consortium and support for the death or injury of a parent by a third party. . . . Yet, such a claim is required to be brought by . . . the administrator of the estate under Iowa Code section 613.15.

*Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 174 (Iowa 2002) (citations omitted); *see also Nichols v. Schweitzer*, 472 N.W.2d 266, 271 (Iowa 1991) ("[S]ection 613.15 designates the personal representative of the deceased as the proper party to bring a suit for the loss of consortium of the deprived spouse. The independent claim of the deprived spouse thus passes to the administrator on death of the injured spouse.").

Yet there is an exception to the rule that either the parent or—in the case of the death—the administrator or executor of the parent's estate must commence an action to recover damages for loss of consortium. *See Nelson v. Ludovissy*, 368 N.W.2d 141, 146 (Iowa 1985). In *Nelson*, Hans Nelson was injured when his farm tractor collided with a truck. *Id.* at 143. He and his wife sued the owner and the operator of the truck seeking damages for Hans's injuries and lost services and support to their minor children. *Id.* However, they made no claim for lost services and support on behalf of their adult children. *Id.* The adult children brought separate actions, which the district court dismissed. *Id.* We reversed. *Id.* at 146.

We explained that while child–parent consortium claims are "subject to the mandates of [Iowa Code section 613.15] concerning who could maintain the action," that "does not completely eliminate" the possibility of separate claims. *Id.* at 145–46. "There may be cases where

joinder of claims is feasible, yet it is not in the best interests of a minor or adult child that the injured parent bring or control the action." *Id.* at 146. We elaborated,

> [W]e must reject appellants' claim that adult children may pursue consortium and loss of support claims under section 613.15 in their own names as a matter of right. The statute expressly provides that "recovery for these elements of damage may not be had by the . . . children, as such, of any person who . . . is entitled to recover same." In order for either a minor or adult child to avoid this statutory proscription, we deem it necessary that the child must first establish to the court's satisfaction that it is impossible, impracticable or not in the child's best interest for the parent to maintain the action.

*Id.* (quoting Iowa Code § 613.15). We continued,

> The required showing may be inferred from the circumstances. Where, as in the present case, the statutory plaintiff has already commenced an action omitting the claims of a child, it may be inferred that the statutory plaintiff has elected against representing the child's interests. Such circumstance will justify maintaining the action in the child's own name subject, however, to joinder with the parent's claim to the extent required by *Madison*. Because the issue is involved in the present actions, we conclude that for this purpose consolidation of pending actions is the equivalent of joinder.
>
> Similarly, and again subject to the requirement of joinder with the parent's claim, we recognize that the rights of adult children to manage and control their own affairs requires that where disagreement arises over who shall control the course of the litigation, this circumstance alone should permit an adult child to maintain a claim under section 613.15 in the child's own name.

*Id.* In short, we recognized an exception to Iowa Code section 613.15 for circumstances when it is "impossible, impracticable or not in the child's best interest for the parent to maintain the action." *Id.* We found this exception applied when the parent had commenced an action without including the adult children's consortium claims. *Id.*

More recently, we have held that a minor child's claim for loss of consortium of a deceased parent is subject to the separate statute of limitations applicable to minors. *Christy v. Miulli*, 692 N.W.2d 694, 706 (Iowa 2005). The logic of this decision was that Iowa Code section 613.15 is essentially a joinder rule for efficiency purposes. *Id.* at 705–06. The administrator does not "own[]" the cause of action. *Id.* at 705. Rather, "a loss-of-parental-consortium claim is independent of the wrongful death claim and belongs to the child." *Id.*; *see also Beeck v. S.R. Smith Co.*, 359 N.W.2d 482, 486–87 (Iowa 1984) (holding that a minor child's loss-of-consortium claim for an injured parent is subject to "the statute [of limitations] applicable to minors," not the statute applicable to the parent).

We agree with the district court that when a personal representative brings a *wrongful-death* action against a party with whom the decedent entered into a binding arbitration agreement, the case is subject to arbitration. This is due to the nature of the wrongful-death action in Iowa:

> Unlike the wrongful death statutes in many states, Iowa's death statutes have always been of the "survival" type. Such a statute does not create a new cause of action in a decedent's survivors; rather, it preserves whatever rights and liabilities a decedent had with respect to a cause of action at the time of his death. The cause of action thus preserved is deemed to accrue to the decedent's estate representative "at the time it would have accrued to the deceased if he had survived."

*Weitl v. Moes*, 311 N.W.2d 259, 270 (Iowa 1981) (plurality opinion) (citations omitted) (quoting Iowa Code § 611.22), *overruled on other grounds by Audubon-Exira*, 335 N.W.2d at 152.

The right to recover wrongful-death damages in Iowa is vested exclusively in the estate representative, *and* the recovery belongs to the

estate. *See* Iowa Code § 611.22; *id.* § 633.336; *Troester v. Sisters of Mercy Health Corp.*, 328 N.W.2d 308, 312 (Iowa 1982). Wrongful-death damages are "damages the administrator of the estate can recover on behalf of the estate." *State v. Izzolena*, 609 N.W.2d 541, 546 n.2 (Iowa 2000). The administrator or executor is in all respects the successor in interest to the party that entered into the arbitration agreement. *See Shook v. Crabb*, 281 N.W.2d 616, 617–18 (Iowa 1979) ("[T]he capacity of an estate to bring an action for wrongful death is contingent upon the capacity of the estate's decedent to bring the action had he or she survived.").

Notably, in other jurisdictions where wrongful-death actions are brought by a personal representative who stands in the shoes of the decedent, courts regularly hold that the personal representative must abide by any arbitration agreement of the decedent. *See Briarcliff Nursing Home, Inc. v. Turcotte*, 894 So. 2d 661, 664–65 (Ala. 2004) (holding in two actions against a nursing home that the personal representatives were "bound by the arbitration provisions contained in the admission contracts"); *Laizure v. Avante at Leesburg, Inc.*, 109 So. 3d 752, 754 (Fla. 2013) (concluding that the survivors of a nursing home patient were obligated to arbitrate wrongful-death claims against the nursing home because such claims are "derivative"); *Sanford v. Castleton Health Care Ctr., LLC*, 813 N.E.2d 411, 422 (Ind. Ct. App. 2004) (holding that wrongful-death claims must be arbitrated based upon an arbitration clause in the decedent's admission agreement because under Indiana law "a personal representative may maintain a cause of action against an alleged wrongdoer only if the decedent, if alive, might have maintained such a cause of action"); *Estate of Krahmer ex rel. Peck v. Laurel Healthcare Providers, LLC*, 315 P.3d 298, 300–01 (N.M. Ct. App. 2013)

(reasoning that "a wrongful death representative is bound to arbitrate if the decedent was personally bound by an arbitration agreement" because "the representative's rights [are] derivative of the decedent's"); *MacPherson v. Magee Mem'l Hosp. for Convalescence*, 128 A.3d 1209, 1226–27 (Pa. Super. Ct. 2015) (holding that personal representatives bringing wrongful-death claims were "bound by otherwise enforceable arbitration agreements signed by a decedent").

By contrast, in jurisdictions where wrongful death is regarded as an independent claim for the direct benefit of the estate's beneficiaries, i.e., the "many states" referenced in *Weitl*, 311 N.W.2d at 270, courts generally do not find the decedent's arbitration agreement to be binding. *See Estate of Decamacho ex rel. Guthrie v. La Solana Care & Rehab, Inc.*, 316 P.3d 607, 614 (Ariz. Ct. App. 2014) (holding a wrongful-death claim against a nursing home not arbitrable because in Arizona "a wrongful death claim is independently held by the decedent's statutory beneficiaries"); *Norton v. United Health Servs. of Ga., Inc.*, 783 S.E.2d 437, 440–41 (Ga. Ct. App. 2016) (determining that an arbitration agreement executed by the decedent's authorized representative during the decedent's lifetime was not binding in a wrongful-death action because such a claim belongs to the survivors); *Carter v. SSC Odin Operating Co., LLC*, 976 N.E.2d 344, 355–58 (Ill. 2012) (rejecting the argument that a wrongful-death action is "a true asset of the decedent's estate" and can therefore be limited by the decedent's agreement to arbitrate); *Ping v. Beverly Enters., Inc.*, 376 S.W.3d 581, 600 (Ky. 2012) ("[T]he wrongful death claimants would not be bound by their decedent's arbitration agreement, even if one existed, because their statutorily distinct claim does not derive from any claim on behalf of the decedent, and they therefore do not succeed to the decedent's dispute resolution

agreements."); *FutureCare NorthPoint, LLC v. Peeler*, 143 A.3d 191, 209–10, 213 (Md. Ct. Spec. App. 2016) (deciding that the decedent's arbitration agreement was not binding in a wrongful-death action because Maryland "has construed its wrongful death statute as creating a new and independent cause of action that does not belong to the decedent or the decedent's estate"); *Lawrence v. Beverly Manor*, 273 S.W.3d 525, 529 (Mo. 2009) (en banc) (finding a deceased nursing home resident's son could bring a wrongful-death action in court despite an arbitration clause because Missouri law creates a "separate" and "not derivative" wrongful-death action to be brought by the decedent's lineal descendants); *Wolcott v. Summerville at Outlook Manor, LLC*, ___ N.E.3d ___, ___, 2016 WL 1178579, at *4 (Ohio Ct. App. Mar. 24, 2016) (holding that under Ohio law, a decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims); *Boler v. Sec. Health Care, L.L.C.*, 336 P.3d 468, 477 (Okla. 2014) ("We agree with the courts that have held that a decedent cannot bind the beneficiaries to arbitrate their wrongful death claim.  Oklahoma's Wrongful Death Act created a new cause of action for pecuniary losses suffered by the deceased's spouse and next of kin by reason of his or her death.  Recovery under the wrongful death act does not go to the estate of the deceased, but inures to the exclusive benefit of the surviving spouse and children or next of kin."); *Woodall v. Avalon Care Ctr.–Fed. Way, LLC*, 231 P.3d 1252, 1258–61 (Wash. Ct. App. 2010) (holding that a wrongful-death action was not subject to the decedent's arbitration agreement because the personal representative of the estate is merely a statutory agent or trustee acting in favor of the beneficiaries, with no benefits flowing to the estate of the injured deceased).

The question we are asked to answer is whether the loss-of-parental-consortium claim, which *belongs* to the children but is ordinarily *brought* by the estate, is subject to arbitration based upon the decedent's agreement to arbitrate. Both the federal district court and the parties have focused on the possibility that certain language in Iowa Code section 613.15 means that consortium claims may only be brought in court. In particular, the statute refers to an "action for damages" and, later, to a recovery "in such sum as the jury deems proper." Iowa Code § 613.15. The Roth children maintain that the phrase "in such sum as the jury deems proper" requires consortium proceedings to be tried before a jury. The federal district court suggested, based on the combined use of the phrase "any action for damages" and the phrase "in such sum as the jury deems proper," that section 613.15 might allow loss-of-parental-consortium claims to be asserted in jury or nonjury court proceedings, but not in arbitration. On the other hand, Good Samaritan argues that the term "any action for damages" encompasses proceedings before any tribunal for the recovery of damages and that the reference to a "jury" is just shorthand for *a* finder of fact.

At the outset, we are not persuaded by the Roth children's argument that Iowa Code section 613.15 requires a jury trial of consortium claims without the possibility of a jury trial waiver. The phrase, "in such sum as the jury deems proper," does not say that such actions must proceed before a jury. It can reasonably be read as describing how damages would be determined unless the right to jury has been properly waived, such as by failure to timely demand a jury. *See* Iowa R. Civ. P. 1.902(1). This allows us to reconcile any conflict between section 613.15 and rule 1.902(1). *See* Iowa Code § 4.7 (stating that we construe general and special provisions if possible to avoid

conflicts); *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 221 (Iowa 2016) ("Our job is to harmonize these statutes to give effect to each.").

Additionally, the presence of the words "any action for damages" at the beginning of section 613.15 to some extent undercuts the Roth children's position that the phrase "in such sum as the jury deems proper" later in the statute establishes a nonwaivable right to a jury trial on parental consortium claims. Clearly, "any action for damages" must include a nonjury proceeding. So, if the Roth children were right, section 613.15 would allow wrongful-death claims to be heard by the court but require consortium claims brought by the same administrator in the same case to be heard by a jury. That would be incongruous. *See* Iowa Code § 4.4(3) ("In enacting a statute, it is presumed that . . . [a] just and reasonable result is intended.").

Also noteworthy are the circumstances surrounding the enactment of Iowa Code section 613.15's predecessor in 1911. *See* 1911 Iowa Acts ch. 163, § 1 (providing that when a woman is injured by a negligent or wrongful act resulting in death, "her administrator may sue and recover for her estate, the value of her services as a wife or mother or both in such sum as the jury may deem proportionate to the injury resulting in her death."). At that time, a separate Iowa statute authorized jury trial waivers, just as rule 1.902(1) does today. *See* Iowa Code § 3733 (1897). One could logically conclude that when the general assembly adopted 1911 Iowa Acts chapter 163, it well understood that the right to have a jury could be waived in accordance with preexisting law.

This would not be the only instance where the Iowa Code literally refers to a *jury* determination but, in context, the reference means a determination by the *factfinder*. For example, Iowa Code section 622.25

allows handwriting evidence to be given "by comparison by the jury, with writings of the same person which are proved to be genuine." Iowa Code § 622.25 (2015). A judge conducting a bench trial surely has the same authority to compare handwriting. Similarly, chapter 646 regarding recovery of real property states that "[i]n case of wanton aggression on the part of the defendant, the jury may award exemplary damages." *Id.* § 646.21. Presumably the court could award those damages even if the trial were not to a jury. And Iowa Code section 659.6 provides that in defamation cases, "an unproved allegation of the truth of the matter charged shall not be deemed proof of malice, unless the jury on the whole case finds that such defense was made with malicious intent." *Id.* § 659.6. Again, we think this directive would apply even if the defamation case were tried to the court.

If Iowa Code section 613.15 established a nonwaivable right to a jury trial on consortium claims, so far as we know it would be the only area of Iowa law where a jury could not be waived. In *Peoples Natural Gas Co., Division of UtiliCorp United Inc. v. City of Hartley*, we held that the jury could be waived in condemnation cases, notwithstanding language in Iowa's constitution providing that "damages shall be assessed by a jury" in such cases. 497 N.W.2d 874, 876 & n.2 (Iowa 1993) (quoting Iowa Const. art. I, § 18). For the foregoing reasons, we reject the Roth children's position that section 613.15 consortium claims can only be decided by juries.

However, to this point we have only determined that a jury trial may be waived in favor of a bench trial in a consortium action under section 613.15. This leaves open the larger question whether a consortium action must be arbitrated if the decedent (or as here his attorney in fact) entered into a binding arbitration agreement. We are

not convinced that the phrase "any action for damages" in Iowa Code section 613.15, read in context, establishes only a right to proceed in court and not by way of arbitration. For one thing, the word "any" is broad. *See Dolphin Residential Coop., Inc. v. Iowa City Bd. of Review*, 863 N.W.2d 644, 660 (Iowa 2015) (Zager, J., dissenting) (noting the breadth of the term "any"). Arbitration, of course, is another way to waive a jury. *See* Iowa Code § 679A.1(1).

Moreover, we are guided by the principle that we construe statutes to avoid constitutional infirmities. *See Iowa Dep't of Human Servs. v. Cmty. Care, Inc.*, 861 N.W.2d 868, 869 (Iowa 2015) (referring to "the principle that we avoid interpreting ambiguous statutes in a manner that leads to constitutional difficulties"); *Simmons v. State Pub. Def.*, 791 N.W.2d 69, 73–74, 88 (Iowa 2010) ("Ordinarily, we construe statutes to avoid potential constitutional infirmity if we may reasonably do so."); *see also* Iowa Code § 4.4(1) (setting forth a presumption that in enacting a statute, compliance with the Iowa and United States Constitutions is intended).

If Iowa Code section 613.15 were interpreted as requiring judicial resolution—as opposed to arbitration—of a particular category of claims, this would raise serious questions as to its validity under the Supremacy Clause of the United States Constitution. *See* U.S. Const. art. VI. The United States Supreme Court has indicated on several occasions that the Federal Arbitration Act (FAA) preempts state laws that purport to forbid arbitration of certain state-law claims. "When parties agree to arbitrate all questions arising under a contract, the FAA supersedes state laws lodging primary jurisdiction in another forum, whether judicial or administrative." *Preston v. Ferrer*, 552 U.S. 346, 359, 128 S. Ct. 978, 987, 169 L. Ed. 2d 917, 929 (2008). "When state law prohibits outright

the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341, 131 S. Ct. 1740, 1747, 179 L. Ed. 2d 742, 752 (2011).[2]

Because of its subject matter, *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. ___, 132 S. Ct. 1201, 182 L. Ed. 2d 42 (2012) (per curiam) is pertinent in this regard. There the United States Supreme Court considered three consolidated negligence cases filed against West Virginia nursing homes. In each case, a family member of the resident had sued the nursing home in state court following the resident's death, even though a clause in the nursing home admission agreement required

---

[2]The FAA provides,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (2012).

> [M]any—if not all—federal and state courts have held that nursing home residency contracts similar to the one at issue here implicate interstate commerce and the FAA. Generally, these holdings center on a common theme: nursing home residency contracts usually entail providing residents with meals and medical supplies that are inevitably shipped across state lines from out-of-state vendors.

*Dean v. Heritage Healthcare of Ridgeway, LLC*, 759 S.E.2d 727, 732 (S.C. 2014).

> Given that the arbitration agreement at issue indisputably involves commerce and that Arbor Brook is subject to federal regulation and control, we conclude that the FAA applies to the arbitration agreement Plaintiff signed as a mandatory condition of nursing home admission.

*Strausberg v. Laurel Healthcare Providers, LLC*, 304 P.3d 409, 417 (N.M. 2013). In the present case, it is undisputed that Good Samaritan procures medical equipment and supplies from a number of out-of-state sources and receives approximately half its income from the Medicare and Medicaid programs.

arbitration of disputes. *Id.* at ___, 132 S. Ct. at 1202–03, 182 L. Ed. 2d at 44. The Supreme Court of Appeals of West Virginia declined to enforce the arbitration clauses, holding that

> as a matter of public policy under West Virginia law, an arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence.

*Id.* at ___, 132 S. Ct. at 1203, 182 L. Ed. 2d at 45 (quoting *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 724 S.E.2d 250, 292 (W. Va. 2011)).

The United States Supreme Court granted the nursing home's petition for certiorari and vacated the state supreme court's decision in a per curiam opinion. *Id.* at ___, 132 S. Ct. at 1204, 182 L. Ed. 2d at 46. Specifically, it held that

> West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA.

*Id.* at ___, 132 S. Ct. at 1203–04, 182 L. Ed. 2d at 45 (citing *inter alia Concepcion* and *Preston*); *see also Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 56, 115 S. Ct. 1212, 1215–16, 131 L. Ed. 2d 76, 83–84 (1995) (FAA preempts state law requiring judicial resolution of punitive damage claims); *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858, 79 L. Ed. 2d 1, 12 (1984) (FAA preempts state statute's bar on arbitration of claims brought under that statute).

*Marmet Health* heightens our doubts as to the constitutionality of a construction of Iowa Code section 613.15 that would require all consortium claims to be resolved in a judicial forum. Such an outcome would result in "a categorical rule prohibiting arbitration of a particular type of claim," and would appear to trigger FAA preemption. *See Weaver*

*v. Doe*, 371 P.3d 1170, 1177 (Okla. Civ. App. 2016) (applying *Marmet Health* and ordering arbitration of a personal injury claim against a nursing home notwithstanding a provision of the Oklahoma Nursing Home Care Act that rejected arbitration of such claims); *Fredericksburg Care Co., L.P. v. Perez*, 461 S.W.3d 513, 528 (Tex. 2015) (ordering arbitration of a wrongful-death claim against a nursing home after finding that a Texas statute limiting arbitration of claims against health care providers was preempted by the FAA).

Nonetheless, we do not find the Roth children's consortium claims subject to arbitration under the facts certified to us. These claims belong to the adult children, and they never personally agreed to arbitrate. *See* Order Certifying Questions at 6 ("The Roth children are correct that none of them signed the arbitration agreement in their individual capacities or otherwise agreed to arbitration of their individual claims."). While loss-of-consortium claims under Iowa Code section 613.15 *could* be subject to arbitration, a decedent's arbitration agreement alone is an insufficient basis for this outcome.

We reach this conclusion for several reasons. First, it bears emphasis that the child owns the cause of action and the personal representative is "merely the conduit, the nominal plaintiff," when bringing the child's consortium claim under Iowa Code section 613.15. *See Beeck*, 359 N.W.2d at 487; *see also Christy*, 692 N.W.2d at 706. The purpose for this arrangement is simply "to reduce a multiplicity of suits and the possibility of double recovery." *Beeck*, 359 N.W.2d at 487; *see also Christy*, 692 N.W.2d at 705–06. Hence, as noted, we have previously held that the child's statute of limitations, not the personal representative's, applies to consortium claims. *Christy*, 692 N.W.2d at 706. We have also accepted that this rule "may result in a child's claim

being prosecuted independently." *Id.* As we have noted in a different setting, "[T]he substantive rights of a plaintiff can be at stake through the application of a statute of limitations." *Rucker v. Taylor,* 828 N.W.2d 595, 603 (Iowa 2013). Accordingly, we do not allow the identity of the nominal plaintiff to define substantive rights when it comes to the statute of limitations for consortium claims.

The FAA too has been viewed as substantive law. It "rests on the authority of Congress to enact substantive rules under the Commerce Clause." *Southland Corp.*, 465 U.S. at 11, 104 S. Ct. at 858, 79 L. Ed. 2d at 12. It is "a body of federal substantive law." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941, 74 L. Ed. 2d 765, 785 (1983). Given the FAA's status as substantive law, it seems quite wrong that an adult child could be bound to that body of law absent his or her agreement, simply because the adult child's claim is routed procedurally through a different party. This, in our view, confuses substance with procedure. *See Mission Residential, LLC v. Triple Net Props., LLC*, 654 S.E.2d 888, 891 (Va. 2008) (finding that a claim filed by a member of a limited liability company on behalf of the LLC was not subject to the member's arbitration agreement because the member was only a "nominal plaintiff" bringing suit on behalf of the LLC).

Second, even if we held that consortium claims brought by a personal representative were subject to the decedent's arbitration agreement, the children would have an easy way to avoid arbitration. Under *Nelson,* if "the statutory plaintiff has already commenced an action omitting the claims of a child," the child may bring the consortium claim directly. 368 N.W.2d at 146. So, in the future, lawyers could sidestep arbitration simply by the expedient of filing a wrongful-death claim

without including any consortium claim, then later filing a consortium action in court naming the children as plaintiffs. Normally, we don't interpret our law as endorsing rules that can be easily circumvented.

Third, in jurisdictions where *the wrongful-death claim* belongs to the survivors but is brought by the personal representative, courts regularly hold that the decedent's arbitration agreement does not lead to arbitration of the wrongful-death case. Here, the situation is somewhat analogous: Under Iowa law, one party owns the claim, but a different party gets to file it.

For example, Ohio courts hold that a personal representative is not bound to arbitrate a wrongful-death claim despite a decedent's arbitration agreement because "[a] decedent cannot bind his or her beneficiaries to arbitrate their wrongful-death claims." *Wolcott*, 61 N.E.3d at 856, 2016 WL 1178579, at *2 (alteration in original) (quoting *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1259 (Ohio 2007)). In Ohio, the personal representative is just the "nominal party" bringing the claim. *Id.* (quoting *Peters*, 873 N.E.2d at 1259). So too in Kentucky. *See Ping*, 376 S.W.3d at 598, 599 (noting that in Kentucky, the wrongful-death cause of action is "prosecuted by the personal representative" but "accrues separately to the wrongful death beneficiaries and is meant to compensate them for their own pecuniary loss"). Likewise in Oklahoma. *See Boler*, 336 P.3d at 476 (noting that a wrongful-death action is "maintained by the personal representative of the deceased person" but "[t]he amounts recovered are distributed to those designated [survivors] as specified in the statute"). Similarly, in Washington, although the personal representative is "the exclusive statutory agent to bring the wrongful death claims on behalf of the heirs," no benefits flow to the estate and the decedent's arbitration

agreement therefore has no effect. *Woodall*, 231 P.3d at 1258–59; *see also Estate of Decamacho*, 316 P.3d at 614 (finding not arbitrable "the wrongful death claim[] brought by [the personal representative] on behalf of herself, Ramiro Camacho, and Candelario Camacho"); *Norton*, 783 S.E.2d at 440–41; *Carter*, 976 N.E.2d at 355–56; *FutureCare NorthPoint*, 143 A.3d at 212–13. We think the same principle applies here, and the nominal plaintiff status of the administrator or executor is not enough to compel arbitration of claims owned by the adult children and not by the estate.

As the certifying federal district court observed, we have in the past characterized the loss of consortium cause of action as "derived" and not "independent." *Roquet by Roquet*, 436 N.W.2d at 47. But it is important to note the context in which these terms were used. We meant that the consortium cause of action is derived *from a statute*, not that it is derivative of the decedent's rights and therefore subject to the decedent's litigation-related agreements. *See id.* (stating that "this cause of action was derived from Iowa Code section 613.15"). For all these reasons, we determine that under Iowa law, adult children's loss-of-consortium claims are not arbitrable just because the wrongful-death action is otherwise arbitrable.

**B. Second Certified Question: Does the Fact That a Deceased Parent's Estate's Claims Are Subject to Arbitration Establish That It Is Impossible, Impracticable, or Not in the Best Interest of the Decedent's Adult Children for the Decedent's Estate to Maintain Their Claims for Loss of Parental Consortium?** In light of our answer to the previous question, this question has become moot.

**IV. Conclusion.**

We have answered the certified questions as set forth above for the reasons stated and return this case to the United States District Court for the Northern District of Iowa for further proceedings consistent with this opinion.

**CERTIFIED QUESTIONS ANSWERED.**