NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JURGEN M., ASHLEY C.,
*Appellants*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.M., L.M.,
*Appellees*.

No. 1 CA-JV 15-0058
FILED 8-18-2015

Appeal from the Superior Court in Maricopa County
No. JD22977
The Honorable Connie Contes, Judge

**AFFIRMED**

COUNSEL

Czop Law Firm, PLLC, Higley
By Steven Czop
*Counsel for Appellant Jurgen M.*

Denise L. Carol Attorney at Law, Phoenix
By Denise Lynn Carroll
*Counsel for Appellant Ashley C.*

Arizona Attorney General's Office
By Michael Valenzuela
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Patricia A. Orozco delivered the decision of the Court, in which Presiding Judge Andrew W. Gould and Judge Peter B. Swann joined.

---

**O R O Z C O**, Judge:

¶1         Jurgen M. (Father) and Ashley C. (Mother) (collectively Parents) appeal from the termination of their parental rights to J.M. and L.M. (collectively Children).  For the following reasons, we affirm the juvenile court's order.

## FACTS AND PROCEDURAL HISTORY

¶2         J.M. was born on June 30, 2011, and L.M. was born on May 27, 2012.  In November 2012, the Department of Child Safety (DCS) received a report that J.M.'s pediatrician found severe burns on J.M.'s legs and bruising on his face.  J.M. was then taken to the hospital, where doctors discovered that he had healing rib fractures and was severely malnourished.  Father was working out of state at the time.

¶3         In late November, Mother underwent a safety plan in which she was allowed to care for Children under case aide supervision, but this was unsuccessful.  In December 2012, DCS took Children into temporary custody and filed a dependency petition as to Parents.  The petition alleged that Mother had abused J.M. and neglected Children's needs due to her severe cognitive deficiencies.  The petition further alleged that Father neglected Children by leaving them in the sole care of Mother while he was away for training with the National Guard.  The juvenile court found Children dependent as to Parents and adopted a case plan for family reunification concurrent with severance and adoption.

¶4         In February 2013, Mother completed a psychological evaluation with G. Joseph Bluth, Ph.D.  Dr. Bluth reported that Mother's ability to parent independently was "poor" due to her cognitive deficiencies and those deficiencies are "not going to change even with the provision of additional services."  He recommended that DCS pursue plans other than reunification for Mother.  Despite this prognosis, Dr. Bluth still recommended Mother be provided individual counseling, parent aide

services, and continued assistance through the Division of Developmental Disabilities (DDD).

¶5            In July 2013, two months after returning to Arizona, Father completed a psychological evaluation with James S. Thal, Ph.D.  Dr. Thal reported that Father's parenting skills were "inadequate" and that Father did not appear motivated to enhance those skills.   Supporting this prognosis, Dr. Thal noted that Father seemed "to whole heartedly endorse [Mother's] parenting abilities despite the fact that others have concluded [she] is incapable of parenting."  He also stated that Father was essentially "unresponsive" when asked about Children's removal from the home and that he knew little about the events leading up to the removal.  Ultimately, Dr. Thal diagnosed Father with untreated attention deficit/hyperactivity disorder (ADHD) and partner relational problems.  He recommended that Father receive a psychiatric consultation to determine whether he could benefit from medication for his ADHD.  He further recommended that Father receive individual counseling, marriage counseling and parent aide services, as well as a neuropsychological evaluation.  Dr. Thal concluded that until Father could demonstrate improved parenting capabilities and an ability to keep Children from harm, "reunification with [Children] may not be warranted."

¶6            In    December    2013,    DCS    provided    Father    a neuropsychological evaluation with Dr. Marc Walter.   The report reaffirmed Dr. Thal's conclusion and diagnosis of ADHD, but added that Father may have a functional level of autism commonly called Asperger's. Dr. Walter affirmed Dr. Thal's recommendations and suggested that Father attend group therapy sessions for his functional autism, if available.

¶7            DCS provided Parents supervised visits with Children through case aide and parent aide services.  During the visits, the parent aide repeatedly noted that Mother had issues supervising and appropriately feeding Children.  When Father attended visits, he would often not participate or he would leave the visit without warning, thus leaving Children alone with Mother.  Furthermore, both parents regularly had issues with transportation to and from visits, and missed a doctor's appointment with J.M.  For the foregoing reasons, the parent aide referral closed unsuccessfully in September 2013.  After Parents failed to attend an intake for a second round of parent-aide services, DCS provided Parents supervised visits with a case aide.  The case aide reported that Parents exhibited the same issues as reported earlier by the parent aide.

¶8        DCS provided Parents marriage counseling and individual counseling.   Parent's case manager testified that Parents did not successfully complete individual counseling because they "didn't make the behavior changes that [DCS] needed to see."   These unchanged behaviors include: providing direction to Children, properly feeding Children, and showing an understanding of the severity of this case.   As to marriage counseling, Mother reported that she regularly had to push Father to attend and that he missed at least twelve sessions.   Furthermore, there was an incident of domestic violence in the weeks before trial.

¶9        As recommended by Dr. Thal, DCS provided Father three scheduled   psychiatric   evaluations,   but   Father   missed   all   three appointments.   The case manager testified that this concerned her because Father knew that he needed to complete the service in order to achieve reunification with Children.   The group therapy recommended by Dr. Walter was not available for Father, but his counselor was aware of his functional autism diagnosis.

¶10        In December 2013, DCS filed an amended petition proposing severance for Mother and Father on the grounds of fifteen months' in out-of-home care.   *See* Arizona Revised Statutes (A.R.S.) section 8-533.B.8(c) (West 2015).[1]   At the conclusion of a two day severance trial, the juvenile court found by a preponderance of the evidence that DCS had made diligent efforts to provide Parents with appropriate reunification services, that there was a substantial likelihood Parents would be unable to exercise proper care and control of Children in the future, Children had been in an out-of-home placement for fifteen months or longer, and that severance was in Children's best interests.   The court ordered termination of Parents' right to Children.   Parents timely appealed,  and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, A.R.S. §§ 8-235.A, 12-120.21.A.1, and -2101.A.1, and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶11        We review the trial court's termination order for an abuse of discretion and will affirm its ruling unless clearly erroneous.   *Angel S. v. Dep't of Child Safety*, 237 Ariz. 132, 136, ¶ 12 (App. 2015).   We view all evidence in the light most favorable to sustaining the juvenile court's rulings.   *Ariz. Dep't of Econ. Sec. v. Rocky J.*, 234 Ariz. 437, 440, ¶ 12 (App.

---

[1]        We cite the current version of applicable statutes when no revisions material to this decision have since occurred.

2014). Termination of parental rights requires DCS prove by clear and convincing evidence at least one statutory ground for termination. *Angel S.*, 237 Ariz. at 136, ¶ 13. The juvenile court must find by a preponderance of the evidence that termination would be in a child's best interest.[2] *Id.*

**¶12** Evidence is sufficient to justify termination under A.R.S. § 8-533.B.8(c) when a child has been in out-of-home care for at least fifteen months, the parent is unable to remedy the circumstances that led to removal, there is a substantial likelihood that the parent will not be able to properly care for the child in the near future, and when DCS has made a diligent effort to provide reunification services to the parent. A.R.S. § 8-533.B.8(c). Parents do not dispute that the Children have been in out-of-home care for almost two years.

I.     Reunification Services

**¶13** On appeal, Mother and Father first argue that the juvenile court erred in its determination that DCS made a diligent effort to provide appropriate reunification services. The purpose of providing reunification services is to allow the parents the time and opportunity to participate in programs designed to help them become better parents. *Christina G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 231, 235, ¶ 14 (App. 2011). While DCS is obligated to undertake measures with a reasonable prospect of success, it is not obligated to undertake measures that are futile. *Id.* at ¶ 15. Moreover, DCS is not required to "provide every conceivable service or to ensure that a parent participates in each service it offers." *Id.* (quoting *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994)).

**¶14** The record reflects that DCS made a diligent effort to provide reunification services to Mother with a reasonable prospect of success. Over a twenty-one month period, DCS provided Mother with two referrals for parent aide services, case aide visits, a psychological evaluation and marital and individual counseling. Parents' case manager testified that DCS offered Mother every service it could. Dr. Bluth opined that the cognitive deficiencies that restrict Mother's parenting abilities are "not

---

2       Without citing any authority, Mother argues that termination is not in Children's best interests. Father's brief does not address the issue. "Opening briefs must present significant arguments, supported by authority, setting forth the appellant's position on the issues raised." *MacMillan v. Schwartz*, 226 Ariz. 584, 591, ¶ 33 (App. 2011); *see also* ARCAP 13(a)(7)(A). Thus, we do not address this issue. *See Sholes v. Fernando*, 228 Ariz. 455, 457 n.1 (App. 2011).

going to change even with the provision of additional services." The record supports that services beyond those reasonably offered would be futile, as Mother continued to exhibit the same issues with feeding and redirecting Children throughout the reunification process. Accordingly, the juvenile court did not err in finding DCS provided adequate reunification services to Mother.

¶15        Father first contends that reunification efforts were insufficient because DCS did not schedule a psychiatric evaluation for him to obtain a prescription for his possible ADHD. However, Dr. Thal only recommended the psychiatric evaluation so that a qualified doctor could determine whether Father might benefit from medication, not to directly prescribe Father medication. Furthermore, DCS scheduled three such psychiatric evaluations for Father, but he attended none. Because DCS is required to give Father the opportunity to partake in services, but not to ensure that he participates in each service it offers, the juvenile court did not err in this finding. *See Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. at 353 (holding that a parent's failure to participate in recommended services does not foreclose termination of parental rights).

¶16        Father also argues that DCS did not provide him with group therapy to address his possible functional autism. The recommendation, however, was given with the condition that such group therapy was *available* to Father. In determining whether DCS made sufficient efforts, the court "shall consider the availability of reunification services to the parent[.]" A.R.S. § 8-533.D. The case manager testified that group therapy was not available to Father at the time, but that other services were offered to Father.[3] Accordingly, DCS did not neglect to offer the other services recommended by Dr. Walter; the services were just not available. *See Christina G.*, 227 Ariz. at 235, ¶ 14.

¶17        Parents argue that reunification services were insufficient because the case manager was not properly trained to assist individuals with cognitive deficiencies. Although the case manager did not have such training, the parent aide did. Moreover, throughout the record, case aide and parent aide providers showed an awareness of Parents' cognitive deficiencies and a willingness to work with them. The record supports the juvenile court's finding that DCS fulfilled its statutory duty by making

---

[3]        Father participated in two rounds of parent aide services, individual and marital counseling, psychological and neuropsychological evaluations and supervised case aide visits.

reasonable efforts to provide Parents with rehabilitative services. *See id.* Thus, we find no error.

II.     Failure to Remedy and Substantial Likelihood of Effective Parental Care

**¶18**          Parents argue that the juvenile court erred in determining there was a substantial likelihood that they will not be capable of exercising effective parental care in the near future. *See* A.R.S. § 8-533.B.8(c).  We disagree.  As to Mother, Dr. Bluth opined that "[s]he would have trouble taking care of her own needs[,] let alone those of a dependent child."  Dr. Bluth reported that Mother has mild mental retardation and recommended DCS consider permanency plans other than reunification.  Evidence of this contention is apparent throughout the record.  During the first round of parent aid services, Mother continually exhibited problems redirecting and properly feeding Children.  She closed out of those services unsuccessfully.

**¶19**          Over one year later, and after parenting classes, Mother still exhibited the same issues.  Moreover, Mother exhibited instability in her marriage with Father, as evidenced by a domestic violence dispute in August 2014.  Finally, Dr. Bluth opined that Mother's cognitive deficiencies were permanent, thus her ability to parent would be unlikely to change in the near future.  *See* A.R.S. § 8-533.B.8(c).

**¶20**          There is also sufficient evidence to uphold the juvenile court's ruling as to Father.  Dr. Thal reported that Father believed it was safe to leave Children with Mother, even after he was told about J.M.'s symptoms of abuse and neglect.  He also reported that Father did not appear to be committed to enhancing his parenting skills.  Dr. Thal and parent aide providers were concerned by this sentiment because Father's obligation to the National Guard required him to be gone for significant periods of time, which would require him to plan for proper supervision for Children in his absence.  During Father's supervised visits with Children, he would regularly leave them unattended to wander away or would be unresponsive to Children and Mother.  These incidents would often result in Children being alone in Mother's care.

**¶21**          Father closed out of parent aide services unsuccessfully.  He also failed to attend multiple individual counseling sessions and the psychiatric appointments.  At trial, Children's case manager testified that Father had not made the necessary behavioral changes required and that she believed Father would not be able to effectively parent Children in the near future.  Dr. Thal testified that Father's diagnosed personality disorder

was "engrained" in his personality and "essentially permanent." Accordingly, there was sufficient evidence to support the juvenile court's finding that Father would not be able to effectively parent Children in the near future.

**¶22** Finally, Parents cite *Marina P. v. Ariz. Dep't of Econ. Sec.*, 214 Ariz. 326 , 331, ¶ 30 (App. 2007), contending that they made good-faith efforts at reunification with Children. In *Marina P.*, we considered whether, under the ground of nine months' in out-of-home placement, the parent substantially neglected or willfully refused to remedy the circumstances that caused the out-of-home placement. *Id.* at 329-30, ¶¶ 19-25; *see also* A.R.S. § 8-533.B.8(a). Here, Parents' rights were terminated on the ground of fifteen-months' in out-of-home placement. *See* A.R.S. § 8-533.B.8(c). Unlike the nine months' ground, the fifteen months' ground does not focus on the parent's good-faith efforts to remedy the circumstances, only whether the parents actually remedied the circumstances. *See id.* Accordingly, *Marina P.* and the good-faith efforts argument do not apply to our analysis under A.R.S. § 8-533.B.8(c). Because Parents failed to remedy the circumstances that led to Children's removal, we find no error.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm the juvenile court's order terminating Parents' rights to Children.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama