NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SAM MALIK, *Petitioner/Appellant*,

*v.*

RICHELLE TRINIDADE, *Respondent/Appellee*.

No. 1 CA-CV 19-0820 FC
FILED 6-22-2021

Appeal from the Superior Court in Yavapai County
No. V1300DO201780354
The Honorable Don C. Stevens II, Judge *Pro Tempore*

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Sam Malik, Phoenix
*Petitioner/Appellant*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

**C R U Z**, Judge:

**¶1**        Appellant Sam Malik ("Father") challenges numerous aspects of the family court's rulings denying him unsupervised parenting time, finding that a house was the sole and separate property of Appellee Richelle Trinidade ("Mother"), and awarding child support and attorneys' fees to Mother. For the reasons set forth below, we affirm in part, vacate in part and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

**¶2**        Father filed for legal separation in August 2017 shortly after Mother obtained an order of protection against him. The court later converted the case from legal separation to dissolution on Mother's request. The parties have three minor children of the marriage. Mother sought sole legal decision-making authority for the children, alleging that Father had a significant history of domestic violence.

**¶3**        Approximately one month later, the parties reached an agreement that Mother would receive sole legal decision-making authority and Father would receive four hours per week of supervised parenting time, which the court memorialized in its temporary orders. The court also ordered Father to undergo anger management and parenting counseling. Father twice petitioned for unsupervised parenting time, but the parties then agreed that he would continue to receive supervised parenting time contingent upon his continuing participation in bi-weekly counseling.

**¶4**        The court set a one-day trial for January 31, 2019, which was continued pending the resolution of a criminal case against Father. The court granted Father two hours of supervised parenting time per week with additional parenting time "to be determined . . . based on the [parenting time] supervisor's reports and any agreements made between [the] Parties" and directed counsel "to report . . . after disposition of the criminal case."

**¶5**        Father again petitioned to modify the temporary orders in the interim, alleging that Mother had engaged in "incessant and illegal meddling" with his parenting time. Mother, meanwhile, moved for partial summary judgment on two issues: (1) that the marriage was irretrievably broken; and (2) that the marital home located in Black Canyon City (the "Melanie Lane House") was her sole and separate property.

**¶6**        On April 19, 2019, the court granted Father "unsupervised parenting time . . . on Monday and Wednesday each week with one child each day for 2 hours . . . plus one 20-minute telephone call with the child

2

who did not have parenting time that week." It later set a June 18, 2019 evidentiary hearing on Mother's partial summary judgment motion. Father reached a plea agreement in his criminal case before that hearing.

¶7  After hearing testimony from both parties at the June 18, 2019 hearing, the court denied Mother's motion for summary judgment without prejudice. It set a trial for July 9, 2019, to "address parenting time, claim to the house, child support and legal decision making," but noted Mother's request that trial be continued so her counsel could be present. The court ordered Mother to file a motion to continue identifying dates that her counsel would be available. She did not do so, but Father did, indicating that his counsel had spoken with Mother regarding potential August 2019 trial dates.

¶8  Approximately one week later, the court issued a lengthy order to address "several motions under advisement" (the "July 3, 2019 Orders"). Stating that it had "conducted several hearings with the parties in the interim" and "reviewed and considered all of the pleadings filed by each party, the arguments by or on behalf of each party, and all exhibits," the court granted Mother's partial summary judgment motion. It also denied several motions filed by Father, including:

> (1) two motions to compel disclosure of certain medical and school records;
>
> (2) a motion for sanctions for Mother's alleged interference with his parenting time;
>
> (3) a motion requesting a power of attorney so that he could "address credit issues";
>
> (4) a motion requesting control of the children's finances; and
>
> (5) a motion seeking to hold Mother in contempt for violating the preliminary injunction entered at the beginning of the case.

¶9  The court then addressed legal decision-making authority and parenting time, finding that "unsupervised parenting time for [Father] would not [be] in the best interests of the children at the present" and ordered that Mother would "continue to have sole legal decision-making responsibility" and be the sole residential parent. It further stated that Father's supervised parenting time for the twelve months after the children started the school year would be established "under terms, conditions and

limitations to be solely determined by [Mother] and approved by the Court."

¶10 The court also awarded Mother $12,606 in back child support, finding that Father "has never paid any child support" and had intentionally withheld child support since filing his original petition "to force [Mother] to withdraw her claims." The court also entered a separate $10,000 judgment against Father based on its finding that he "forced [Mother] under the threat of having him take the children to Pakistan to apply for credit cards and charge $5,000 on each of two cards so that [he] could repay his mother an alleged loan." The court also stated that it would award Mother attorneys' fees because she was the successful party. It then vacated the July 9, 2019 trial, finding that "the rulings made in this Order resolve all remaining issues that would otherwise have to be resolved through trial," but invited either party to file a pretrial statement if he or she believed any issues remained unresolved.

¶11 Father did not file a pretrial statement but did move to alter or amend the July 3, 2019 Orders, contending that the court's decision to vacate trial deprived him of "an opportunity to back his claims as well as cross-examine [Mother]." The court denied that motion. It then entered a decree on October 2, 2019, formalizing the July 3, 2019 Orders and awarding Mother monthly child support (the "Decree"). That same day, it also issued an "Amended Order Re Child Support, Parenting Time and Other Matters" that largely mirrored the July 3, 2019 Orders (the "October 2, 2019 Orders").

¶12 Five days later, the court held a hearing at which the parties again reached agreement "as to supervised parenting time for [Father]" (the "October 7, 2019 Orders"). The court granted Father two hours per week of supervised parenting time and one supervised thirty-minute telephone contact with the children each week.

¶13 Father filed a notice of appeal challenging the October 2, 2019 Orders and the Decree. Approximately one month later, Father filed an emergency motion alleging that his visits with the children had stopped and again seeking unsupervised parenting time. On December 3, 2019, the court denied Father's motion and vacated the October 7, 2019 Orders, directing the parties to "follow the Court's orders issued October 2, 2019" (the "December 3, 2019 Order").

¶14 Approximately one month later, this court stayed Father's appeal because neither the October 2, 2019 Orders nor the Decree were certified as final under Arizona Rule of Family Law Procedure ("Rule")

4

78(c). Father then moved for entry of a certified order and filed a separate "Motion to Correct" the December 3, 2019 Order, arguing, among other things, that the October 2, 2019 Orders did not fully resolve parenting time. He also moved this court to direct the superior court "to hold an evidentiary hearing to uphold [his] Parenting Time." We revested jurisdiction in the superior court "to consider the Motion to Correct . . . and/or to resolve the parenting time matter, and to enter a Rule 78(c) order."

**¶15** Father then filed multiple motions asking the superior court to vacate or reconsider the parenting time schedule, enter sanctions against Mother for interfering with his parenting time, and reinstate the October 7, 2019 Orders. The court set a March 5, 2020 evidentiary hearing that Father did not attend. The court reset the hearing for June 18, 2020.

**¶16** After the hearing, the court issued new legal decision-making authority and parenting time findings (the "July 23, 2020 Orders"). The court awarded Mother sole legal decision-making authority, granted Father up to three hours of supervised parenting time on Sundays, and certified its orders under Rule 78(c). Father filed a new notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1).

## DISCUSSION

I.      The Court Erred In Vacating the July 9, 2019 Trial.

**¶17** Father contends the court's decision to vacate the July 9, 2019 trial violated his due process rights because the July 3, 2019 Orders were entered "without the benefit of [a] hearing, evidence, testimony or cross-examination." Generally, procedural due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Comeau v. Ariz. State Bd. of Dental Exam'rs*, 196 Ariz. 102, 106-07, ¶ 20 (App. 1999). We review whether the court afforded due process de novo. *See Jeff D. v. Dep't of Child Safety*, 239 Ariz. 205, 207, ¶ 6 (App. 2016).

**¶18** The July 3, 2019 Orders state that the court had "conducted several hearings with the parties in the interim" and had "reviewed all of the pleadings and testimony received from the parties in this matter." And Father's characterization of the June 18, 2019 hearing as a "pre-trial hearing" appears to be inaccurate, as the court heard testimony from both parties and a third witness Mother listed in the parties' joint pretrial statement. Father did not provide a transcript of this hearing. We therefore must assume the evidence presented would support the superior court's findings and conclusions. *Hefner v. Hefner*, 248 Ariz. 54, 60, ¶ 19 (App. 2019).

¶19        But the court's post-hearing minute entry directing "both parties [to] submit to the Court a proposed parenting time plan" and stating that it still intended to conduct a trial "that will address parenting time, claim to the house, child support and legal decision making" suggests the evidence presented as of June 18, 2019, did not pertain to, or at least did not completely resolve, those issues. Furthermore, the court directed the parties to file "exhibits relating to the Motion for Summary Judgment" but not exhibits relating to parenting time, child support, or legal decision-making authority. As such, nothing in the record suggests the court gave Father reasonable notice that it would decide any issues beyond those raised in Mother's partial summary judgment motion based on the evidence presented as of June 18, 2019. *See, e.g.*, *Huck v. Haralambie*, 122 Ariz. 63, 65 (1979) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).

¶20        This does not conclude our review, as "[d]ue process errors require reversal only if a party is thereby prejudiced." *Volk v. Brame*, 235 Ariz. 462, 470, ¶ 26 (App. 2014). Prejudice is apparent here because the court entered orders on legal decision-making authority, parenting time, and child support while simultaneously vacating the trial at which the parties were to present evidence on those issues. And while the July 3, 2019 Orders were not final, the court largely incorporated them into the October 2, 2019 Orders and the Decree without conducting any evidentiary hearings in the interim.

¶21        We find there was sufficient evidence that Father's due process rights were violated. Further, Mother failed to file an answering brief, which we deem a confession of reversible error as to this issue only. *Beck v. Beck*, 9 Ariz. App. 77, 78 (1969); *see also McDowell Mountain Ranch Cmty. Ass'n v. Simons*, 216 Ariz. 266, 269, ¶ 13 (App. 2007). The court therefore erred in entering these orders without conducting the scheduled trial.

II.    The Court Did Not Err in Its Rulings on Mother's Partial Summary Judgment Motion or Father's Various Motions or in Awarding Attorneys' Fees.

¶22        Not all of the July 3, 2019 Orders raise due process concerns. Father also challenges the court's rulings on some of his then-pending

6

motions, each of which was fully briefed. We address those challenges below as necessary.

A. Summary Judgment Re: The Melanie Lane House

¶23 Father challenges the court's ruling granting partial summary judgment to Mother regarding the Melanie Lane House. We review that ruling de novo. *Palmer v. Palmer*, 217 Ariz. 67, 69, ¶ 7 (App. 2007). Summary judgment should be granted only "if the facts produced in support of [a] claim . . . have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim." *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990).

¶24 Father contends on appeal without citing any authority that "social security disability/retirement payments are considered to be community property during the marriage." This is incorrect. *See McNeel v. McNeel*, 169 Ariz. 213, 214 (App. 1991) ("Disability benefits are the separate property of the spouse suffering the disability."); *Luna v. Luna*, 125 Ariz. 120, 123 (App. 1979) ("[T]he Social Security disability benefits received by petitioner are his separate property and no offsetting award can be made to respondent/appellee."). Moreover, he presented no evidence to refute Mother's evidence that she was the sole owner of the Melanie Lane House, that she purchased it before the parties were married, and that she made the mortgage payments from her Social Security disability benefits, which she kept in a separate account.

¶25 Father also presented no evidence to support his contentions that Mother "agreed to add [him] to the deed . . . as an equal and co-owner of the property" or that the parties commingled community funds with Mother's disability benefits. He also presented no evidence to support his "vehement" denial that Mother used her disability benefits to pay down the mortgage. On this record, we cannot say the court erred in granting summary judgment.

B. Denial of Father's Motions for Access to Medical and School Records

¶26 Father also challenges the court's denial of his motions seeking access to the children's medical and school records. The court initially granted him access to the children's school records in the July 3, 2019 Orders but revoked that access in the October 2, 2019 Orders. It also denied Father's medical records requests in the October 2, 2019 Orders, finding that he did not seek the records in good faith because "there is no

evidence that the minor children have suffered injuries or trauma while in [Mother's] care, and the evidence is in fact to the contrary." The court further found that Father was "likely to use any information he can obtain to support his attacks of [Mother]."

**¶27** Father does not challenge these findings on appeal, nor does he develop his arguments beyond quoting a portion of Arizona's Parents' Bill of Rights. *See* A.R.S. § 1-602(A). He therefore has waived them. *Sholes v. Fernando*, 228 Ariz. 455, 461, ¶ 16 (App. 2011).

        C.      Denial of Father's Motion Alleging Violations of the Preliminary Injunction

**¶28** Father also challenges the court's denial of his motion for contempt and for sanctions for Mother's alleged violations of the preliminary injunction.

**¶29** The alleged violations he presented to the superior court related to the Melanie Lane House, which we address above. Father adds new allegations on appeal that Mother "removed [him] from the auto insurance, medical insurance as well as sell his personal property in yard sales," but cites no record support. He therefore has waived these arguments as well. *Sholes*, 228 Ariz. at 461, ¶ 16.

        D.      Attorneys' Fee Award to Mother

**¶30** Father also challenges the court's attorneys' fee award to Mother. We address the award separately from the due process issues discussed above because the court may consider awarding fees "from time to time." A.R.S. § 25-324(A). We review the award for an abuse of discretion. *Murray v. Murray*, 239 Ariz. 174, 179, ¶ 20 (App. 2016).

**¶31** Father did not respond to Mother's fee application. He cannot raise new objections for the first time on appeal. *See K.B. v. State Farm Fire & Cas. Co.*, 189 Ariz. 263, 268 (App. 1997). We note, however, that the court awarded Mother fees because she was "the successful party." Fee recovery under § 25-324(A) does not hinge on a party's success, but rather on consideration of both parties' financial resources and the reasonableness of their positions. A.R.S. § 25-324(A); *Quijada v. Quijada*, 246 Ariz. 217, 222, ¶ 15 (App. 2019).

**¶32** Nonetheless, the court made multiple findings on Father's unreasonable positions, stating that he had "acted in bad faith at almost every stage in these proceedings," "intentionally withheld child support to

force [Mother] to withdraw her claims," and filed multiple motions that were "not well taken, not supported by the facts or the law, and not made in good faith." The court also found Mother's decision to retain counsel was "reasonable and necessary due to [Father's] actions." We therefore reject Father's bald contention that the court did not "determine if his positions were reasonable."

¶33 Father also contends the court ignored that he was "destitute." The court considered and discredited his claim of poverty.

¶34 Father also contends the court did not find that he filed his petition in bad faith, without factual or legal grounds, or for an improper purpose under § 25-324(B). The court need not make § 25-324(B) findings to award fees under § 25-324(A). *See Cruz v. Garcia*, 240 Ariz. 233, 238, ¶ 19 (App. 2016) (treating subsections (A) and (B) as separate matters). For these reasons, we affirm the fee award.

     E.     Father Does Not Challenge the July 23, 2020 Parenting Time Orders

¶35 As noted above, the court entered new parenting time orders on July 23, 2020, following a separate evidentiary hearing. Father does not challenge these orders on appeal and did not provide the relevant hearing transcript. Those orders therefore are affirmed. *See Hefner*, 248 Ariz. at 60, ¶ 19 ("Because we are unable to review the evidence, we assume it would support the court's findings and conclusions.").

## CONCLUSION

¶36 We vacate the Decree, the October 2, 2019 Orders, and the July 3, 2019 Orders on all issues except those affirmed in sections II(A)-(E) of this decision and remand for an evidentiary hearing. We do not award attorneys' fees or costs because Father was not represented by counsel in this appeal and Mother did not file an answering brief.



AMY M. WOOD • Clerk of the Court
FILED:   AA